## West Buffaloe Township *against* Walker Township.

The same rules of evidence by which other causes are tried must be adhered to by the court in settlement cases. Hence, if an order of removal be affirmed by the quarter sessions upon secondary evidence, when primary evidence, for aught that appears, might have been produced, this court will quash it.

APPEAL from the court of quarter sessions of *Centre* county, which affirmed the order of removal of Benjamin Troy, a pauper, from Walker township, Centre county, to West Buffaloe township, Union county.

Upon the hearing before the court of quarter sessions, Walker township was permitted to give parol evidence of the fact that Benjamin Troy was bound by indenture and served in West Buffaloe township, without giving sufficient evidence of the loss of the indenture; and upon this evidence they affirmed the order of removal.

*Blanchard* and *Merrill*, for appellants, cited, 3 *Burns's Just.* 448; *Burr. Set. Cas.* 272, 290; 3 *Burns's Just.* 489, 492; 2 *East* 54, 63; 8 *East* 25; 6 *Watts* 290; 3 *Whart. Rep.* 440; 9 *East* 295.

*M'Callister* and *Miles*, for appellees, cited, *Burr. Set. Cas.* 123, 91; 5 *Binn.* 81; 6 *Serg. & Rawle* 104; *Burr. Set. Cas.* 151, 735, 292, 731; 3 *Stark. Ev.* 1321.

The opinion of the Court was delivered by

KENNEDY, J.—Although we think the evidence was not sufficient to show that Benjamin Troy, the pauper, gained a settlement in Walker township by a hiring and service under the same, yet we also think that the evidence adduced to prove that he had acquired such right in West Buffaloe township, by having lived therein as an apprentice under an indenture executed for that purpose, was insufficient, and not the best that might, for aught that appears, have been procured. And consequently the order of removal from Walker township to West Buffaloe township cannot be sustained, but must and ought to have been quashed by the court of quarter sessions below.

In the first place, I would observe, that from the evidence given, supposing all of it to have been admissible, it does not appear distinctly that Benjamin Troy ever was bound as an *apprentice* by indenture, as has been contended by the counsel for Walker township. He was only called a " bound boy;" and it was understood by the witness that he was bound by indenture, but he has no recollection

[West Buffaloe Township v. Walker Township.]

that he ever saw any, nor can he testify that it existed. This seems to have been the most that was known to that witness or to any of the others that have testified to this point. Though bound by indenture, it may have been that he was bound as a servant, and not as an apprentice ; for none of the witnesses seem ever to have known or heard, in any way, which of the two characters he served in. Still, however, if the evidence were such as ought to have been received, and were sufficient for the purpose of proving the fact either way positively, it would not materially vary the result ; for a service under the former, if Troy were unmarried and without a child at the time, or an inhabitancy under the latter, within West Buffaloe township for one whole year, would, according to the provisions of the act of assembly, have entitled him to a settlement therein, and have been sufficient to sustain the order of removal charging West Buffaloe township with his maintenance. But seeing Walker township claimed that the pauper had acquired a right of settlement in West Buffaloe by an inhabitancy or service under a deed of indenture, the indenture itself was the best evidence of its contents, and ought, therefore, if within the power or reach of the party claiming the benefit of it, to have been produced, or otherwise its nonproduction accounted for by proving its loss or destruction. If such indenture ever existed, Robert Chambers, the master, most probably had it in his possession at the time of his death. He, it seems, made a will previously, of which his wife and Joseph Musser, one of the witnesses, were executors. After his death, all his papers fell into the hands of his executors. This indenture may have been among them, and therefore it would seem to have been proper that they both should have been examined touching the existence of such paper and what had become of it. Mr Musser only, however, was examined. He says he does not recollect that he ever saw it or had it ; but the widow was passed by, who might possibly have given some account of it. She, though now deceased, was living at the time of the making of the original order of removal, and therefore might, and, we think, ought to have been examined. And had it thereupon appeared that the indenture was not to be had, then parol evidence of its execution and contents might have been received. But without first showing that the indenture itself could not be produced, parol evidence of its execution and contents, not being the best within the power of the party for all that was shown, was clearly inadmissible. 3 *Burns's Just.* 492, 493, 494, 495 ; 2 *Term Rep.* 41. But even if it had been proved that an instrument of writing, purporting to be such an indenture on its face, had been destroyed, or was not to be found where it was reasonable to suppose it might be, if in existence, a great portion of the evidence was inadmissible, upon the ground that it was either taken *ex parte* or is hearsay. Rebecca Barkly's testimony, for instance, is of the latter description, and therefore ought not to have been received. Her having heard what she has testified from those who are said to have

been parties to the indenture, does not obviate the objection, because she did not hear it from them as part of the *res gestœ*, but from them separately, long after the service had taken place, and the relation of master and apprentice, or master and servant, if either ever existed, had expired. King *v.* The Inhabitants of Chadderton, 2 *East's Rep.* 25; King *v.* The Inhabitants of Erith, 8 *East's Rep.* 539. The hearsay or declarations of the pauper himself, though he be dead, are not admissible; nor can his *ex parte* examination in writing, taken on oath before two magistrates, touching his settlement, be received as evidence of such settlement. King *v.* The Inhabitants of Ferry Frystone, 2 *East's Rep.* 54; King *v.* The Inhabitants of Abergeviley, 2 *East's Rep.* 63. The pauper, in questions of settlement, is not regarded as a party to the contest; hence his admissions or declarations are not admissible more than that of any other person. He, however, may be examined as a witness in the same manner as other persons, and in this way only can his narrative be made evidence. In short, the same rules of evidence must be adhered to in settlement cases that govern in others; and accordingly it has been held that the pauper cannot be called to prove the execution of his indenture of apprenticeship, without it be first shown that the subscribing witness thereto is dead or cannot be had. King *v.* The Inhabitants of Harringworth, 4 *Maule & Selwyn* 350.

The order of removal made by the justices of the peace and the affirmance thereof by the court of quarter sessions are quashed.