## BOWMAN ET AL. V. OFFICER & PUSEY.

1. **Principal and Agent**: TERMINATION OF AGENCY: TAX TITLE. An agent having charge of real estate cannot acquire a tax title thereon as against his principal, and this rule is not changed by the fact that the principal has failed to furnish money to pay the taxes; there must be an unambiguous relinquishment of the agency before the agent can acquire an interest in the subject of it adverse to that of his principal. Facts considered upon which it was held that a tax title acquired by agents was held in trust for their principal, and the case distinguished from *Eckrote v. Myers*, 41 Iowa, 324.

*Appeal from Pottawattamie Circuit Court.*

THURSDAY, JUNE 10.

THE plaintiff Henderson, being the owner of certain lots in Council Bluffs, conveyed an interest therein to Robert Boyce. Afterward, in 1856 or 1857, said plaintiff and his brother furnished Boyce with about $10,000, with which Boyce purchased certain lands in Monona and Pottawattamie counties in this State, the title to which was taken by Boyce in his own name. Boyce and the Hendersons resided in South Carolina, and when the war of the Rebellion broke out they joined the Confederate army, and in 1863 Boyce died intestate without having made a conveyance of the lands purchased with the money furnished him by Hendersons. Administration was granted on the estate in South Carolina, and auxiliary letters of administration were granted to the plaintiff in this State. This action was originally brought by said administrator against W. T. Henderson and Officer & Pusey for the purpose of having the interest of the estate in said lands declared, and the same applied to the discharge of a claimed indebtedness thereof. Pending the action a compromise was effected between W. T. Henderson, who had become owner of his brother's interest, and the administrator, whereby each were to own one-half of said lands, and thereupon Henderson joined the administrator as plaintiff in demanding relief against Officer & Pusey.

Previous to 1871 the defendants had paid the taxes on the lands for Henderson for a portion of the time, and afterward purchased the same at tax sale in their own name.    On February 18, 1871, there was an accounting between them and Henderson, and he was on that day found indebted to them in near the sum of $3,500, for which he gave his note payable in one year with ten per cent interest, and to secure which he executed a mortgage on certain of the lots.    It was arranged at that time that Henderson should also execute a power of attorney to one of the defendants, which he did on his return to South Carolina on the 23d day of April, 1871, to the defendant Thomas Officer, and thereby the latter was authorized "to take charge of, lease, pay taxes, sell and convey by deed of warranty all or any portion" of the real estate.

On the day previous to the commencement of this action the defendant Officer, under and by virtue of the power of attorney, conveyed to his co-defendant the Monona county lands, and the defendants claim all of the balance of the lands and lots under certain purchases thereof made by them at tax sales.    The Circuit Court found in favor of the defendants, confirmed their right to all of the lands, and dismissed the petition.    The plaintiffs appeal.

*Clinton, Hart & Brewer* and *James, Aylesworth & Mynster,* for appellants.

*N. M. Pusey* and *W. S. Mayne,* for appellees.

SEEVERS, J.—I.    As to the Monona county lands.    In equity they were the property of the Hendersons.    Having been purchased with their money the title taken by Boyce must be held to have been taken in trust for them.    Said lands could not be subjected to the payment of the debts of Boyce unless the estate acquired an interest therein as against the defendants under the compromise decree in March, 1879. There is no evidence tending to show that the defendants at any time acted as the agents of Boyce, and in 1866 said lands

VOL. LIII—41.

were purchased by them at tax sale, and the certificate of purchase assigned to Henderson. In 1865 the heirs at law of Boyce conveyed said lands to Henderson, thus doing what their ancestor should have done. This vested Henderson with the legal title, and his attorney in fact conveyed said lands to the defendant Pusey in consideration of the sum of three thousand dollars, which was credited on his indebtedness to the defendants. Afterward, in 1877, Henderson was at Council Bluffs, and at that time was fully informed of said conveyance, and ratified and confirmed it. This had the effect to vest the legal title to said lands in the defendants, which the subsequent compromise decree did not and could not take from them.

II. As to the other lands and town lots the plaintiffs are entitled to relief unless their title and interest has been divested by the purchase of the same by defendants at tax sale. The plaintiffs insist that defendants were agents of Henderson, and therefore could not acquire while such relation existed a tax title and hold the same adversely to him or his grantee. That such relation existed at one time there is no doubt; indeed, it is not denied, but the defendants insist it had been terminated before they purchased the lands. The burden is, therefore, on them. It may be safely asserted, we think, that the law is an agent who has charge of real estate cannot acquire a tax title thereto and hold the same adversely to his principal. The mere fact the principal has failed to furnish means to pay the taxes will not justify the agent in procuring and holding such a title. Cooley on Taxation, 347; *McMahan v. McGraw*, 26 Wis., 614; *Krutz v. Fisher*, 8 Kan., 90.

1. PRINCIPAL and agent: termination of agency: tax title.

In *Bartholomew v. Leech*, 7 Watts, 172, it is said: " The most open, ingenuous and disinterested dealing is required of a confidential agent while he consents to act as such, and there must be an unambiguous relinquishment of his agency before he can acquire an interest in the subject of it. To

leave a doubt of his position in this respect is to turn himself into a trustee. It is unnecessary to recur to authority for a principle so familiar and so accordant with common honesty." To the same effect are *McMahan v. McGraw*, and *Kurtz v. Fisher*, before cited.

The defendants' book account with Henderson was introduced in evidence. It shows charges for taxes paid, $1,230.32 March 14, 1873, and as late as July, 1874, the defendants charged Henderson with taxes paid on a lot in Council Bluffs. At this time Henderson was indebted to them in the sum of at least $2,500, exclusive of the amount due on the promissory note he had given them. Henderson was notified from time to time of the amount required to pay taxes, and finally defendants informed him they would make no further advances, and "that the property would have to go to tax sale." He failed to provide funds to pay, and said "he was unable either to pay his then existing debt to Officer & Pusey, or to pay the accruing taxes upon his property."

In October, 1874, defendants purchased a portion of the property in controversy at tax sale, and another portion in October, 1875. After this the defendants collected and paid money on account of said real estate, which they credited and charged to Henderson; the last charges and credits being late in March, 1876.

There is no evidence even tending to show the defendants took any steps to terminate the agency, except to notify Henderson they would not make any further advances. The power of attorney was retained, and there is no evidence tending to show that sales of property could not have been made, and means thus provided to pay accruing taxes. It is idle to say the power of attorney was to Officer and not to the firm. It was executed for the benefit of the latter, and the firm, and not Officer, were the agents of Henderson in paying taxes and taking care of the property.

The account kept with Henderson conclusively, we think, when considered in connection with the other evidence, shows

that the relation of principal and agent, so far from being terminated, continued, and was existing between the parties at the time and after the defendants purchased at tax sale. This being so, it follows, we think, that defendants must be charged as trustees holding the tax certificates in trust for Henderson.

It is urged that "the account is not an account of Officer & Pusey as agents with Henderson. It is the account of Henderson with them. It is a debtor and creditor account, and not an accounting by an agent."

It is not material what it may be called, nor is it material the account was not kept as agents, if therefrom it can be ascertained with reasonable certainty that defendants had charge of the property. The burden is on the defendants to show, as we have said, a termination of the agency. This, we think, they have failed to do.

In 1877 defendants exhibited their account with him to Henderson, and pressed him for a settlement, and made a "full statement in reference to the amount advanced in payment of taxes on his property,       *      *      *      producing all vouchers, tax certificates, and also showing what sales had been made by his attorney, Thomas Officer,       *      * when and how the purchase money had been applied." This also shows quite satisfactorily that defendants at that time were insisting that Henderson should settle and adjust his indebtedness, included among which was the amount paid out by the defendants for the tax certificates. But the defendants insist that Henderson at that time ratified and confirmed all that had been done by defendants, and then said: "If I ever realize anything further out of my Iowa property it will be through the magnanimity of Officer & Pusey, as I have neither money or disposition to litigate with men who have for so many years had charge, and confidence of myself, and who, I am free to say, have in no instance abused that confidence, and I am only sorry that it is out of my power

to accept any proposition for settlement which you have offered me."

What such offers were we are not advised. But it clearly appears that defendants did not claim to hold the tax certificates adversely to Henderson, except to the extent of their advances. It cannot, therefore, be said that Henderson ratified and confirmed the action of defendants to any greater extent than the claim made on him, which was that he settle and adjust the amount due the defendants. This he is now willing to do.

His property was then incumbered with this litigation, and he could do nothing with it to settle with defendants and declared he was unable to do so, and, therefore, he was compelled to trust to the magnanimity of the defendants. But as he has compromised with the Boyce estate, we think that Henderson has the right to pay the amount due defendants and obtain his property. If he can do so, so can his grantee, the estate of Boyce. Whether the compromise decree has this effect or not, or whether any claims have been proved up against the estate, we regard as immaterial so far as the defendants are concerned, for they must account to Henderson at all events, and if he so insists, they must account to some one jointly with him. We are unable to see why it can in any way prejudice the defendants to do so.

Counsel for the defendants insist that this case cannot be distinguished from *Eckrote v. Myers*, 41 Iowa, 324. We think otherwise. In the cited case the defendant did not have charge of the property, except for the purpose of foreclosing a mortgage, as an attorney. It never was his duty, nor did he undertake, to pay taxes. He terminated the agency as far as it was possible to do, and he did nothing after he notified the plaintiff that he must have money to pay the advances made. In the case at bar, as we have seen, the defendants had charge of the property, and continued to act in relation thereto long after they purchased at tax sale. The material

thing is that the agency had not been terminated when the purchase at tax sale was made.

The cause will be remanded to the Circuit Court, with directions to ascertain the amount due the. defendants. · In making the computation, the account exhibited to and approved by Henderson in 1877 will be regarded as correct. Whatever amounts defendants paid for the tax certificates, or since that time, will be ascertained, and defendants must be allowed interest thereon, with annual rests, at the rate of six per cent. We are unwilling, if we have the power, to make the rate of interest greater, because of the power of attorney, as thereunder, we think, the defendants might have procured means to pay the taxes; at least there is no showing to the contrary. The amount thus found due must be paid within some reasonable time to be fixed by the court, and the decree should provide for vesting the title absolutely in the plaintiffs or the defendants upon compliance or non-compliance with its terms. -

REVERSED.