Fountain Coal Company v. Phelps *et al.*

Filed May 8, 1884.

No. 10,523.

FOUNTAIN COAL COMPANY v. PHELPS ET AL.

PRINCIPAL AND AGENT.—*Purchase by Agent of Principal's Property at Sheriff's Sale.—Title.*—An agent employed to take care of and manage his principal's property can not acquire any title thereto by purchase at sheriff's sale, as against his principal, while such relation exists.

SAME.—*Trust and Trustee.*—Such agent can not acquire title to such property by such purchase without first severing such relation, and if any doubt exists as to his attitude, he will be deemed a trustee for his principal.

SAME.—*Notice.—Burden of Proof.*—When such agent attempts to sever such relation by notice, the burden is upon him to show that his principal was notified of such altered relation.

SAME.—*Acquiescence.—Ratification.*—A principal can not acquiesce in the purchase of his property by his agent until he knows that such purchase has been made, and the onus of showing it is upon the agent.

From the Fountain Circuit Court.

*F. Ullmann, L. Nebeker* and *H. H. Dochterman,* for appellant.

*J. McCabe, C. M. McCabe, L. P. Miller* and *E. F. McCabe,* for appellees.

BEST, C.—This action was brought by the appellant against the appellees, to set aside a sheriff's sale of its property, to

compel Samuel W. Phelps and S. Henry Phelps, as trustees, to account for its use and proceeds, and to enjoin the other appellees from declaring a forfeiture of the leases made by them for a portion of the property used for mining purposes.

Issues were formed, a trial had and judgment rendered for the appellees. A motion for a new trial was overruled, and this ruling is assigned as error. The ground of the motion was that the finding was contrary to the evidence and the law.

The undisputed evidence shows that on and prior to the 20th of March, 1878, the appellant owned and was operating a valuable mining property in Fountain county, in this State, consisting of the east half of block five, in Gish, Nebeker & Co.'s subdivision number one, of the west half of the northeast quarter of section one, township eighteen north, of range nine east; also a leasehold interest in the northeast quarter of the same section, except forty-five and one-half acres; also thirty-three acres off the east side of the east half of the northwest quarter of said section; also one horizontal engine and boiler, feed pumps, hoisting machinery, one shaft building and screens, one track scales, one blacksmith shop, eight tons of eight pound bank T rail, fifty-one miners' cars, two pumps in the mines, eight thousand props and caps, a shaft, four mules, one horse, one barn, one upright engine, three single houses, eighteen double houses and a quantity of tools and other implements; that from the 1st of September, 1875, until the 20th of March, 1878, Samuel W. Phelps was the superintendent of the appellant, and as such was in charge of its property and had the control and management of its business, and was allowed a salary of $3,600 per annum for a portion of the time, and $4,000 per annum for the residue; that his son, S. Henry Phelps, was also in the employ of the appellant, as its cashier and bookkeeper, until the 1st day of March, 1878, at a salary of $100 per month; that on the 7th day of July, 1877, said superintendent made a statement of the condition of said company, showing that it then owed him $4,655.22, and that the claims due it exceeded

by $557.46 all it owed subject to some deductions from certain accounts which might equal or exceed the excess. This was in addition to the mining property above enumerated; that on the 4th day of February, 1878, Samuel W. Phelps made out an account against the appellant, showing a balance then due him of $9,454.10 for services rendered and for money advanced, and assigned this account to his son, who paid him thereon $200 and made him his note for the residue, which was to be paid during the months of March, April and May following; that on February 11th, the son commenced an action upon such claim in the Fountain Circuit Court against the appellant, caused a summons to be served on his father, as the appellant's agent, and on the 25th day of February, 1878, took a judgment by default for $9,454.10; that on February 15th, 1878, George Nebeker and Abraham Gish commenced an action in said court against the appellant upon a note made by the son, as its agent, caused the summons to be served upon him, and on the 25th day of February, 1878, they took a judgment against the appellant by default for $1,130.60; that this claim was purchased by the son, on the 23d day of February, 1878, and after it was put into judgment the judgment was assigned to him; that prior to this time the funds of appellant were deposited in the bank of Nebeker & Gish, sometimes by Samuel W. Phelps, and sometimes by S. Henry Phelps, and the checks drawn by either in the name of the former were alike honored upon presentation; that upon this claim he paid nothing at the time of purchase, but deposited to his own credit $1,000, and after the judgment was taken this sum was applied upon the purchase and the balance then paid; that the father had employed the son as bookkeeper, and on the 1st day of March, 1878, the son notified him that he would resign, but notwithstanding this notice he continued thereafter to assist his father in keeping the books, though this was done, as he says, voluntarily and without compensation; that on the 6th day

of March, 1878, executions were .issued upon these judg-
ments, and all the mining property except the real estate was
levied upon by virtue of the writ issued upon the Nebeker
& Gish judgment; that this was not taken by the sheriff, but
was left in possession of Samuel W. Phelps until the 20th
day of March, when it was bid off by S. Henry Phelps for
$9,450, all of which, less costs, was applied upon said writs,
and receipts for the same were made by the father in the
name of the son; that Samuel W. Phelps and S. Henry es-
tablished the firm of "Samuel W. Phelps & Son," on the 1st
day of April, 1878, and thereafter carried on the business as
usual; that on the 20th day of April, S. Henry bid off the
real estate for $450, which, less costs, was applied upon one
of said writs; that the other appellees had leased the land
then held by appellant, and, by the terms of the lease, a fail-
ure to comply with its stipulations authorized them to de-
clare it forfeited, by giving notice in writing, and for the
purpose of enabling S. Henry Phelps to hold the property
thus purchased by him, the other appellees, on the 15th day
of March, 1882, served such notice upon him and upon his
father, declared such lease forfeited, and immediately executed
another to him for such property. All this was done with-
out notice to any officer or agent of the appellant other than
said Samuel W. Phelps; at least, the record fails to show any
such notice, and it likewise fails to show that any other offi-
cer or agent of the appellant had any notice of these proceed-
ings at any time prior to the institution of this suit, which
was commenced on the 27th day of March, 1882.

These facts are undisputed, and a mere recital of them shows
that the sale of this property can not be sustained. Samuel
W. Phelps was the superintendent of the appellant's business,
and had the control and management of this property. It was
his duty to protect and preserve it, and while he sustained
such relation he could not acquire any interest in it to the
prejudice and detriment of the appellant. This is conceded;

but it is insisted that S. Henry Phelps sustained no such relation, and by reason of such·fact he was at liberty to make the purchase. This is based upon the assumption that the notice given his father that he would not act as clerk and bookkeeper after the 1st of March, 1878, divested him of all obligation to the appellant, and that thereafter he dealt with it and its property at arm's length. (It is conceded that prior to this time he sustained such relation as precluded him from making the purchase; but it is insisted that such notice severed the relation.) We think otherwise. The relation that he sustained prior to this time imposed upon him, as a like relation imposed ·upon his father, the duty to preserve and protect this property, not for himself or themselves, but for the appellant, their principal and .employer, and he could not acquire any personal interest in such property in opposition to the wishes, and detrimental to the interests, of his principal, without first making an absolute and unequivocal surrender of his agency. A mere formal surrender was not sufficient; it was necessary that it should be made in good faith and without question, and that such altered relation should be fully communicated to the principal. (If made simply for the purpose of acquiring an interest in the principal's property, or if done in such manner as to raise a reasonable doubt as to the agent's attitude toward the principal, such relation will be deemed to continue, and such agent treated as a trustee.

In *Bartholomew* v. *Leech*, 7 Watts, 472, it is said: "The most open, ingenuous and disinterested dealing is required of a confidential agent while he consents to act as such; and there must be an unambiguous relinquishment of his agency before he can acquire a personal interest in the subject of it. To leave a doubt of his position in this respect is to turn himself into a trustee. It is unnecessary to recur to authority for a principle so familiar or so accordant with common honesty."

In *Ex Parte Lacey*, 6 Vesey, 625, the court held that where a trustee had acquired an interest in the trust property after

the relation had been severed, unless it appeared that the connection had been satisfactorily dissolved, the *cestui que trust* had his option to take back the property, even though no gain had been made by the purchase.

The same salutary doctrine is announced in the following cases: *McMahon* v. *McGraw*, 26 Wis. 614; *Krutz* v. *Fisher*, 8 Kan. 90; *Bowman* v. *Officer*, 53 Iowa, 640.

In the light of these authorities, S. Henry Phelps must be deemed a trustee at the time of his purchase, notwithstanding the fact that he gave his father notice that he would not serve the appellant after the 1st of March, 1878. This notice was a mere formality. It did not of itself sever the relation, and the relation was not in fact severed, as it appears that such agent thereafter not only had access to the books of the principal, but that he made entries as before. This operated to continue the relation, and the notice given does not appear to have affected it in the least.

In addition to this, it was necessary that this notice should have been given to the principal. It was not sufficient to serve it upon the father. It is apparent that his attitude was hostile to the best interests of the company, and while his duty required him to serve it, his interests induced him to act adversely. The assignment of the account to the son substantially without consideration, the institution of the suit, the service of process, the rendition of the judgment, the sale of the property, the execution of receipts for the purchase-money, the formation of the new firm, and the continuance of the business without interruption, show with unmistakable clearness the purpose of the entire transaction, and the whole is too transparent to withstand the scrutiny of a court of equity for a single moment. Under such circumstances, a notice served by the son upon the father will not bind the appellant, and without notice to the appellant the son's relation was not severed, and he could not, therefore, purchase the property and retain the title. *Davoue* v. *Fanning*, 2 Johns. Ch. 252; *Michoud* v. *Girod*, 4 How. 503, 550;

Fountain Coal Company *v.* Phelps *et al.*

*Blake* v. *Buffalo Creek R. R. Co.*, 56 N. Y. 485 ; *Cook* v. *Berlin Woolen Mill Co.*, 43 Wis. 433 ; *Martin* v. *Wyncoop*, 12 Ind. 266.

The burthen rested upon S. Henry Phelps to show that this notice given his father was communicated to some other officer or agent of the appellant, and, in the absence of such proof, the presumption is that no such information was imparted. *Cook* v. *Berlin Woolen Mill Co., supra.*

The point is also made that the delay to bring the suit for four years after the sale was made was such an acquiescence in it as now precludes a court of equity from disturbing it. This point is not well taken. A party can not acquiesce in a sale of his property until he knows that one has been made. There is no evidence in this case that the appellant knew its property had been sold for any length of time before the suit was commenced, and hence it does not appear that it acquiesced in such sale. The appellant is not bound by the knowledge possessed by Samuel W. Phelps, and aside from him it does not appear that any officer or agent of the appellant knew anything about the sale until about the time this suit was commenced.

The court below prefaced its finding with an opinion that it was incumbent upon the appellant to show that it did not have notice that S. Henry Phelps had ceased to act as its clerk, and that the sale had been made, and, applying this rule, found for all the appellees without any inquiry as to the appellees other than Samuel W. and S. Henry Phelps, and as this was wrong a new trial should be granted generally. For these reasons we think the court erred in refusing to grant a new trial, and for such error the judgment should be reversed.

PER CURIAM.—It is therefore ordered upon the foregoing opinion, that the judgment be and it is hereby in all things reversed, at appellees' costs, with instructions to grant a new trial.

Filed May 8, 1884.