ELIZABETH KREGAIN v. JAMES P. BLAKE, EU-
GENE L. HARTRICH and JOHN S. BLAKE &
BROS. REALTY COMPANY, Appellants.

Division One, March 14, 1922.

1. **AMENDING PETITION:** Correcting Mistake: Conformity to
Proof. Where the original petition alleged that plaintiff was in-
formed of certain facts by one of the named defendants and the
proof showed it was by another of the named defendants the trial
court properly permitted the petition to be amended to conform
to the proof, the amendment not materially changing the issues.

2. **PRINCIPAL AND AGENT:** Corporation as Agent: Fraud by
Officers: Parties Liable. Where a corporation was the agent of
plaintiff to collect the rents from her real property, and its vice-
president and treasurer learned that such real property was about
to be sold under execution issued on a judgment against plaintiff,
and thereafter its president bought in said property at such sale at
a grossly inadequate price and had the title put by the sheriff's
deed in the name of a salesman employed by the corporation, a
trust was raised in favor of plaintiff and she was entitled to relief
against such corporation and its vice-president and treasurer and
such salesman, the president having died.

3. ————: ————: ————: ————: Joint Tortfeasors: Dismissal as
to One. In such case the fact that plaintiff, having joined such
president as a defendant in her suit, on the trial dismissed her
suit as to him, on account of his death, in no way affected her
right to recover against the other defendants; the rule being
that where several wrongdoers are joined as defendants, charged
with the same tort, plaintiff may, at any stage of the proceedings,
dismiss as to any one or more of them, without affecting the merit
of the action or lessening the liability of the others.

4. ————: ————: Notice. Where a corporation acts as agent its
officers who are active in the management of its business are
chargeable with knowledge of every fact concerning the corpora-
tion's affairs which the exercise of ordinary diligence and the per-
formance of their duties would give them; and, correspondingly,
the corporation is chargeable with any knowledge acquired by
them while acting in the course of their employment as to any
material matter within the scope of their authority.

5. **SUIT TO DIVEST TITLE: Parties Defendant: Record Owner.**
Where plaintiff's real property was sold under execution issued
on a judgment against her and was bought in at such sale at a
grossly inadequate price by the president of a corporation which
was plaintiff's agent to collect rents from such property, and by
direction of such president the sheriff's deed was made to an em-
ployee of the corporation and such deed was recorded so that the
record title stood in the name of such employee, a suit to divest
him of title and vest same in plaintiff was properly brought and
judgment rendered against such employee, notwithstanding he
testified on the trial that by direction of such president he had
executed a deed to such property leaving the grantee's name blank
and delivered the same to such president, there being no evidence
that the name of any one had been inserted in such blank deed.
Nor was it necessary to make as a party defendant a third party
who claimed that he had paid such president for such real prop-
erty and claimed to own it, no evidence of his claim being of record.

6. **EVIDENCE: Self-Serving Statements: Exclusion.** The trial court
properly sustained objections to questions calling for self-serving
statements, either as to the defendant who was the witness being
examined, or as to the corporation defendant of which he was vice-
president and treasurer; particularly in view of the fact that all
such questions were in effect submitted and answered in different
form and defendants could not have been prejudiced by their ex-
clusion.

7. ——: **Admission of Ignorance: Exclusion.** Where a witness has
testified that he has no personal knowledge of who furnished the
money to pay for land at an execution sale, the trial court properly
excluded proferred testimony from him to the effect that the cor-
poration defendant did not furnish such money.

8. ——: **Best and Secondary: Carbon Copies.** Where there was
no evidence that certain original letters from defendant to plain-
tiff were ever mailed or delivered to plaintiff, nor evidence or ad-
mission that plaintiff ever received them, the trial court properly
excluded certain unsigned documents claimed by defendant to be
carbon copies of such original letters, especially as they related to
matters which were in substance covered by other evidence in the
case and their admission would not have changed the findings of
the trial court.

Appeal from St. Louis Circuit Court .—*Hon. G. A. Wur-
deman,* Judge.

AFFIRMED.

*Seneca C. Taylor* and *A. E. L. Gardner* for appellant.

(1)   A party cannot sue upon one cause of action and recover upon another.  He cannot sue upon a cause of action against A and recover against B.  Faulkner v. Faulkner, 73 Mo. 335; Reed v. Bott, 100 Mo. 66; Clements v. Yeates, 69 Mo. 625; Milliken v. Thyson Comm. Co., 202 Mo. 654; Roden v. Helm, 192 Mo. 94. (2)   Duplicate original letters are admissible in evidence same as the original.  Bond v. Sandford, 134 Mo. App. 484; Leschen v. Brazelle, 164 Mo. App. 417; Whittaker v. Bell Oil Co., 182 Mo. App. 238.   (3)   (a)  Any evidence is relevant which tends, even though slightly, to induce belief in the truth of the charges, or in the truth of the denial or plea.  The party seeking to prove or disprove the proposition at issue may proceed step by step, offering link by link.  Lane v. Mo. Pac. Ry. Co., 132 Mo. 19; McCloskey v. Pulitzer Pub. Co., 152 Mo. 350. (b)  On a question of fraud the evidence may embrace all those facts and circumstances which go to make up the transaction, disclose its true character, explain the acts of the parties and throw light on their objects and intentions.  Smalley v. Hale, 37 Mo. 104.   (c)  In determining the existence of fraud any evidence, direct or circumstantial, which is competent by other rules of law and which in the opinion of the court has a legitimate tendency to prove or disprove the allegations in issue, is admissible. 20 Cyc. 110. (4)  Fraud is never presumed and may not rest alone on supposition or conjecture. The burden of proof is on the party who alleges fraud. Troll v. St. Louis, 257 Mo. 658.   (5)   A party is not permitted by his evidence to contradict his pleadings.  Seibert v. Allen, 61 Mo. 482; Bank v. Armstrong, 62 Mo. 59; Weil v. Poston, 77 Mo. 284; Lenox v. Harrison, 88 Mo. 491; Real Estate Co. v. Hotel Co., 202 Mo. 605.

*E. McD. Stevens* for respondent.

(1)   The defendant, Hartrich, was still the record owner of this property and had made no conveyance other

than to sign a deed in blank, which was null and void; therefore he would be the only party in interest in this suit and a recovery against him would be proper. (2) Notice must be given to produce original letters before a mere carbon copy is admissible in evidence the same as an original. There must be evidence to show that the originals were either lost or stolen or destroyed before copies are admissible. Unsigned copies are not duplicate originals. (3) Self-serving statements invading the province of the court are not admissible. (4) A party can amend his petition by leave of court to conform to his proof. The other party cannot complain unless he is taken by surprise, and then such amendment is generally grounds for a continuance. Secs. 1273, 1274, R. S. 1919. (5) The remedy which equity affords to the defrauded persons is most extensive. It reaches all those who are actually concerned in the fraud, all who knowingly and directly participated in its fruits, and all those who derive title from them voluntarily or with notice. Troll v. St. Louis, 257 Mo. 654; Pomeroy's Eq. Jur. (3 Ed.) sec. 918. (6) Persons who, having means of acquiring knowledge of fraud, shut their eyes to the incriminating circumstances for the purpose of obtaining advantage through the fraudulent acts under plea that they had no knowledge thereof, are chargeable with fraud. Veney v. Furth, 154 S. W. 793. (7) Circumstantial evidence is competent to prove a conspiracy as well in a civil as in a criminal case. Allen v. Forsythe, 160 Mo. App. 262. (8) Where several wrongdoers are joined as defendants charged with the same act plaintiff may dismiss, at any stage of the proceedings, as to any one of them, without affecting the merit of the action as to the others. Berkson v. Railway, 144 Mo. 211; Allen v. Forsythe, 160 Mo. App. 262; Rogers v. Rogers, 265 Mo. 209. (9) An agent is wholly prohibited from acquiring, to the prejudice of his principal, directly or indirectly, any interest in property which is the subject-matter of his agency. Grumley v. Webb, 44 Mo. 444; Meek v. Hurst, 223 Mo. 698; Dodd v. Wakeman, 26 N. J. Eq. 484; Witte v. Storm,

236 Mo. 485·; Coal Co. v. Phelps, 95 Ind. 271. (10) It is immaterial whose funds were used to purchase the property in question. Witte v. Storm, 236 Mo. 489; De-Mallagh v. DeMallagh, 77 Cal. 126. (11) The relation between principal and agent is one of trust, and the agent is not permitted to use information of advantage gained from his position for his own benefit against the interest of his correlate, nor can he intermeddle on his own account with the subject of his employment, and his termination of the agency will not release him from accountability. Dennison v. Aldrich, 114 Mo. App. 700.

ELDER, J.—This is an action in equity seeking to divest defendants (appellants herein) of title to a tract of land in St. Louis County and to have the same vested in plaintiff; also for an accounting between the parties. One John S. Blake was originally named as a defendant, but on the day of the trial the suit was dismissed as to him, it appearing that he was deceased.

The amended petition of plaintiff alleges that defendants are engaged in the real estate business in the city of St. Louis; that for a long time prior to December 30, 1918, plaintiff had been a client or customer of defendants James P. Blake, John S. Blake and John S. Blake & Bros. Realty Company, and as such had entrusted them with the care and management of the land in suit and other property, and with the collection of rents therefrom; that defendant Hartrich is an employee of the Realty Company, and that defendants James P. and John S. Blake are officers thereof, actively engaged in the management of its business; that plaintiff is the owner of the property in suit and, by reason of her previous dealings with, and having confidence in the honesty and ability of, defendants Blake and the Blake Realty Company, placed the same in their charge as her agent; that prior to December 30, 1918, a judgment was rendered against plaintiff in the Circuit Court of the City of St. Louis for $207.23, upon which an execution was issued to the Sheriff of the County of St. Louis, who, on October

22, 1918, levied upon an undivided one-half interest in and to said property and advertised the same for sale to satisfy said judgment; that at said time plaintiff was confined to her bed and notified defendants of said levy and notice of sale; that defendant James P. Blake informed her that he would pay said judgment, interest and costs and expenses of sale and charge same to her account if sufficient, and if insufficient would take the amount so paid out of the rent receipts; that all of defendants, conspiring together with the corrupt and fraudulent intent to cheat and defraud plaintiff out of an undivided one-half interest in and to said property, failed to pay said judgment and, on the 30th day of December, 1918, the Sheriff of St. Louis County sold said property to John S. Blake, who took title to the same in the name of defendant Hartrich, a "straw man;" that since said sale defendants Blake or the Blake Realty Company have been paying the sum of $18.75 per month, making a total of $187.50, collected as rent for said property, to either themselves or defendant Hartrich; that plaintiff requested defendant James P. Blake to secure a deed to said property from defendant Hartrich, who is holding title thereto as trustee for plaintiff, but that said Blake would inform plaintiff that Hartrich was a non-resident of Missouri, was out of the city at the time, and that he did not know when he would return, when in fact he was at all times in Blake's office; that plaintiff is ready, able and willing to pay defendants such sums as may have been paid out by them at said sale, less the rents received by them; that the reasonable market value of the undivided one-half of said property sold as aforesaid was $15,000, and that the price at which said property was bought in was $275. The prayer of the petition is that an account be taken between the parties, that an order be made directing defendant Hartrich to convey said property to plaintiff or, upon failure so to do, that title be divested out of defendants and vested in plaintiff.

The separate answers of defendants James P. Blake and John S. Blake & Bros. Realty Company were general

denials. The answer of defendant Hartrich was a general denial, coupled with allegations in effect admitting plaintiff's ownership of the property in question, admitting the judgment mentioned in plaintiff's petition and the execution and sale thereunder, but denying that John S. Blake informed plaintiff that he would pay the said judgment, denying that defendant Hartrich ever conspired with his co-defendants to cheat and defraud plaintiff, and denying that he is the employee and "straw man" of said defendants, or holds said property as trustee for plaintiff.

The reply to the answer of defendant Hartrich was a general denial.

George M. Herpel, chief Deputy Sheriff of St. Louis County, testified on behalf of plaintiff, referring to the records of the sheriff, that an execution was received by him from the Sheriff of the City of St. Louis on September 26, 1918; that on October 21st plaintiff was notified of her exemption rights; that on October 22nd levy was made upon all of the interest of plaintiff to an undivided one-half interest in the property involved; that notice of sale was published for twenty days in a newspaper of St. Louis County, and that the property was sold for $275 on December 30, 1918, to Eugene L. Hartrich. The witness stated:

"I was present at the sale on that date. I did not have any conversation with him at that time until after the sale. The property was declared sold to him by the sheriff and he, Mr. John S. Blake, went up in the office and he asked that the deed be put in the name of Eugene L. Hartrich, and he paid me the purchase price."

Over the objection of counsel for defendants, the witness stated that he delivered the deed to Mr. Hartrich in the office of John S. Blake & Bros. Realty Company.

Plaintiff testified that she had known Mr. James P. Blake for about five years; that he "attended to my property in St. Louis and out in the county.

"Q. What did he do with reference to your county property? A. I asked him if he could not come out here and take care of it, and he said that he would.

Kregain v. Blake.

"THE COURT: Q. Take care of it? A. Yes, sir.

"Q. Prior to the sale of your undivided one-half interest in your farm out here, what did Mr. Blake do with reference to that property, prior to the sale? A. Well, he sent me—

"THE COURT: What sale do you mean?

"MR. STEVENS: This sheriff's sale.

"A. He sent me a paper judgment and I called him up and asked him if he would take care of it—I was unable to go out—and he said he would.

"MR. TAYLOR: I object, and ask that that be stricken out. The petition alleges that the conversation was with John S. Blake, there is no such allegation in the petition with James P. Blake.

"THE COURT: You don't have to allege conversations.

"MR. STEVENS: I ask leave to amend, I thought that it was John S. Blake that she had the conversation with; it is merely a clerical error.

"THE COURT: Well wait until you are through.

"MR. TAYLOR: I object to the question and answer; it is contrary to the pleadings in this case. (Objection overruled; exception saved).

"MR. STEVENS: Q. Just state the conversation you had and all that transpired between you and Mr. Blake with reference to this property?

"THE COURT: You refer to James P. Blake?

"MR. STEVENS: Yes, Your Honor.

"A. I just asked him if he would take care of it, and when I went down there he told me that the place was sold, and I asked him who it was and he said that he did not know, and afterwards when I went back again he said that it was a non-resident, and I asked him if the non-resident would sell his part and he said that he would write and find out, and I went down there again and he said, 'No, sir, that he did not care to sell at the present time.' Mr. Blake never did tell me the man's name that had bought this property. I requested that name. When I requested the name of the man Mr. Blake

said he would let me know later on, he didn't know anything, and later on he came with a lease, he said it was on the lease, and he would let me know then."

There was thereupon introduced in evidence two leases to the property in question, one being a duplicate of the other, both dated September 9, 1919, being from plaintiff and Eugene L. Hartrich to Frank Blanner, running for one year at a rental of $37.50 per month, and both purporting to be signed by Eugene L. Hartrich and Frank Blanner. Plaintiff testified that both copies were brought to her by Mr. James P. Blake after the sale of the property, but that she refused to sign them. Further testifying plaintiff said:

"I don't remember when I first got notice that this property was going to be sold in the county. I was sick at that time. I was confined to my bed at the time. I did not have any money at the time, so I asked Mr. Blake if he would take care of that and I told him that I would either give him my note, or he could take it out in rents. Mr. Blake said, 'All right, he would take care of it.'

"Q. Do you know how much rent Mr. Blake, either James P. Blake or John S. Blake or the John S. Blake & Bros. Realty Company, or Eugene Hartrich, ever collected from the sale of that farm, how much of rental did they collect? A. I only got one-half of the rent. After that sale they only sent me one-half of the rent, that is all. The rent per month was, I think, $37 and something, $37.50—I am not quite sure.

"Q. Are you ready and able and willing now to pay any balance found due them on this property? A. No, sir; I haven't got any money just now.

"Q. Well, can you get the money? A. Yes, sir; I guess I can."

On cross-examination plaintiff testified that all of her dealings had been with Mr. James P. Blake, and that all the Blake Realty Company had to do with the county property was to collect the rents of $37.50 per month; that as soon as the same were collected she would go down and get them; that she was advised by both the

sheriff and James P. Blake that the sale was going to take place; that she knew that neither James P. Blake nor John S. Blake & Bros. Realty Co. had any money on hand belonging to her; and that the conversation had by her with James P. Blake was over the telephone three or four days before the sale.

D. C. Taylor testified that the whole farm in question was worth about $10,000 in December, 1918. Henry P. Kerth testified that it was worth between $10,000 and $12,000.

Mr. Stevens, counsel for plaintiff, testified that before he filed the suit at bar he called at the office of John S. Blake & Bros. Realty Company, saw Mr. Hartrich, and asked him for a deed to the property in question; that "Mr. Hartrich said he did not know anything about it, that I would have to see either Mr. Fred Blake or James P. Blake;" that witness waited until Mr. Fred Blake came in, when witness told him that "to avoid a law suit I would give him the $187.50 that he had collected and pay him $275 and give him $187.50 for his trouble in the matter;" that Blake responded, No, that he could not and would not submit a proposition like that even to his client."

Mr. James P. Blake, testifying on behalf of defendants, denied that he had promised plaintiff to take care of a sale of the property.

"Q. What did you say to her, if anything, with reference to the sale of this property? A. Do you mean at this particular time?

"Q. Yes, sir; or at any other time? A. I don't remember that; I wrote her and visited her personally on more than one occasion and urged that she must do something or that the property would be sold. She told me on one occasion that they could not sell the property; that she did not get the money under which this judgment was obtained and therefore they could not sell it—sell her property.

"Q. What did you say to her? A. I told her they would.

"Q. What did you say to her, if anything, about you or John S. Blake Realty Company furnishing any money to pay off this judgment? A. I told her and wrote her to that effect that we did not—

"Mr. Stevens: I object to what you wrote her.

"Q. Just what you told her? A. I told her we could not furnish any money. She said she did not want to borrow any money on the place. I told her we did not make loans on that class of property. . . .

"Q. What happened at this sale? A. The property was bid in, as I understand, by John S. Blake in the name of Eugene L. Hartrich.

"Q. You know by whom that property was purchased? A. Yes, sir.

"Q. Who? A. George S. McLain."

On cross-examination the witness stated that on December 30, 1918, he was vice-president and treasurer of the John S. Blake & Bros. Realty Company; that John S. Blake was president, Fred Blake was secretary, and Eugene L. Hartrich was chief salesman; that the $18.50 a month collected as rents from the one-half interest sold was paid to Mr. McLain; that the reason he did not tell plaintiff that McLain had bought the property was that he then did not know that fact, and did not discover it until about thirty or sixty days after the death of John S. Blake, which occurred on March 5, 1919; and that he had taken the leases offered in evidence to plaintiff's home to have her sign them.

Eugene L. Hartrich testified that he had been in the employ of John S. Blake & Bros. Realty Co. for ten years; that he was the person in whose name the property in suit had been purchased; that John S. Blake asked his permission to use his name to buy a piece of property for a personal client of his; that witness and his wife executed a deed to the property, leaving the name of the grantee blank, and witness delivered the same to John S. Blake; that he did not know whether McLain's name was filled in on the deed. The witness admitted that he had told counsel for plaintiff that he had nothing to

do with the matter, and that he would have to see either Fred or James P. Blake.

Fred A. Blake testified that he had told counsel for plaintiff that "if he had any proposition to make, I would submit it to the owner of the farm—I had no interest in it one way or the other;" that he first learned that John S. Blake had purchased the property at the sale a day or two later when he saw the transfer in the "Daily Record." Asked if he knew who furnished the money for the purchase of the property, the witness replied, "I don't know personally anything about it."

George F. McLain testified that he had been in the real estate business and was also selling stocks and bonds; that he had no connection with the John S. Blake & Bros. Realty Co.; that he had had a number of transactions with John S. Blake; that he had seen the property in question once.

"Q. Will you kindly state how you acquired this property in question, the half interest in this property in question? A. Mr. Blake informed me that this sale was pending.

"Q. Which Mr. Blake was that? A. John S. Blake, and he suggested that he take me out there and show me the property, that he might want to bid at a sale, and we went out and looked at it and when the sale came up I did not have an opportunity to come out here to Clayton that day and I told John if it went at a reasonable figure to buy it in for me and he did so.

"Q. Now, then, when did you next hear from John S. Blake after that sale took place? A. I think it was about two days, I saw John after that.

"Q. Did you have any dealings with John S. Blake & Bros. Realty Company in regard to that property? A. No, sir; none whatever.

"Q. Did you have any dealings with James P. Blake in regard to that property? A. No, sir."

On cross-examination the witness stated that he had paid $275 for the property and a commission of $50 to John S. Blake.

The foregoing fairly presents the relevant evidence adduced.   Other matters which may be pertinent to the errors assigned will be adverted to in the course of the opinion.

The court found the issues in favor of plaintiff and rendered a judgment and decree ordering that defendant Hartrich, within ten days, convey to plaintiff by good and sufficient deed the undivided one-half interest in and to the property in question; that upon failure to so convey said interest the same be fully vested in plaintiff; that plaintiff pay into the hands of the clerk of the court for the use of defendants, the sum of $87.50, and that defendants pay the costs of suit.   From this judgment and decree defendants have appealed.

I.   Learned counsel for defendants contend that the court erred in admitting testimony of plaintiff to the effect that James P. Blake stated he would take care of the judgment against her, when the original petition alleged that it was John S. Blake who had so **Amending Pleading.** informed her.   At the close of the entire case plaintiff was allowed to amend the original petition so as to conform to the proof, by striking out the name of John S. Blake and inserting in lieu thereof the name of James P. Blake.   As we gather from the brief it is with respect to this amendment, coupled with the admission of testimony of plaintiff in conformity thereto, that defendants complain.

The amendment was authorized by our statute (Sec. 1274, R. S. 1919), which empowers the court to amend a pleading, at any time before final judgment, "by correcting a mistake in the name of a party, *or a mistake in any other respect.*" (Italics ours).   Clearly the object of the amendment, as sanctioned by the statute, was to conform the petition to the proof. And by the construction given this statute amendments are within the sound discretion of the trial court and on appeal will not be interfered with unless palpably abused.   [Wright v. Groom, 246 Mo. 158; Broyles v. Eversmeyer, 262 Mo. 384.]   This

construction is entirely consonant with the long estab-
lished doctrine that amendments should be liberally al-
lowed in the furtherance of justice, unless shown to
operate to the prejudice of the other party.   [Moore v.
Sandusky, 46 Mo. 377;  Dozier v. Jerman, 30 Mo. 216;
Martin v. Martin, 27 Mo. 227;  Ensworth v. Barton, 67
Mo. 622.]   In the instant case the amendment did not
materially change the issues, and we see no reason to
interpose our judgment and hold that the trial court did
not soundly exercise its discretion.   The point made is
therefore ruled against defendants.

II.   As further error learned counsel for defend-
ants assign that the court erred in not finding for de-
fendants and against plaintiff for the reason that, if the
rights of plaintiff were violated, "on the proof
made by plaintiff it was John S. Blake, who was
dead at the time of the trial, and George F.
McLain who wronged the plaintiff," and not any of the
defendants.   Counsel argue that a party cannot sue upon
a cause of action against A and recover against B, their
theory being that the evidence does not show that either
James P. Blake or the John S. Blake & Bros. Realty
Company committed any wrong against plaintiff, but
that the same was perpetrated by John S. Blake, against
whom plaintiff's action was dismissed, and by George
F. McLain, who was not a party to the suit.

Before proceeding to a consideration of the above
insistence let us briefly review the salient features of the
evidence.   During a period of about five years plaintiff
had employed the John S. Blake & Bros. Realty Company
to collect the rents accruing from the property in suit.
Her dealings had always been with defendant James P.
Blake, who was vice-president and treasurer of the com-
pany.   Plaintiff's property being about to be sold under
execution she telephoned James P. Blake requesting him
to take care of the judgment and telling him that she
would "either give him her note or he could take it out
in rents."   To this plaintiff says that Blake replied "all

right, he would take care of it." Blake denied having this conversation with plaintiff, although he admitted having urged her to pay off the judgment. About two weeks later plaintiff learned from Blake that the property had been sold, but he did not then disclose to her the purchaser's name. Blake says that he first learned that the property had been bought in by John S. Blake (who was president of the Realty Company), in the name of defendant Hartrich (who was the company's chief salesman), "shortly after the sale took place;" that he had no conversation with John S. Blake about the purchase of the property prior to the sale; and that it was "a day or two" after the sale took place that he learned that John S. Blake "had been out there at the sale." The property was bid in by John S. Blake for $275, although the testimony shows that a one-half interest therein was worth from $5,000 to $6,000. George F. McLain, who claimed to own the property, says that he paid John S. Blake $275 therefor and a commission of $50.

Under the foregoing state of facts beyond doubt the John S. Blake & Bros. Realty Company was the agent of plaintiff. James P. Blake and John S. Blake, being officers of the company, and active in the management of its business, were chargeable with knowledge of every fact concerning the corporation's affairs which the exercise of ordinary diligence and the performance of their duties would give them. [14a C. J. p. 100, sec. 1867.] Correspondingly, the corporation was chargeable with any knowledge acquired by either of them while acting in the course of their employment, as to any material matter within the scope of their authority. [14a, C. J. p. 484, secs. 2350, 2351; Bank v. Schamburg, 38 Mo. 228; Common Sense Mining Company v. Taylor, 247 Mo. 1; Trust Company v. Phoenix Ins. Co., 210 S. W. (Mo. App.) 98; Mayer v. Old, 57 Mo. App. 639.] Accordingly, when James P. Blake learned that plaintiff's property was about to be sold, his knowledge of that fact became chargeable to the Realty Company. And that company, being the agent of plaintiff, could not use its confidential re-

lation and the knowledge thus acquired as an instrument of speculation or of unfair advantage over plaintiff. [Evans v. Evans, 196 Mo. 1.] And John S. Blake, being an officer of the company, and chargeable with notice of its agency, became bound by the same rule. Therefore, when John S. Blake purchased the property at a grossly inadequate price, and took title in the name of defendant Hartrich, the chief salesman of the company, a trust was raised in favor of plaintiff. And this aside from the fact that according to plaintiff's testimony, and as specifically found by the trial chancellor, James P. Blake had informed plaintiff that he would pay the judgment under which the property was sold. Thus in Grumley v. Webb, 44 Mo. 444, a case closely analogous to the case at bar where an agent empowered to collect rents, purchased property at a sale under execution levied thereon pursuant to judgments outstanding against his principal, he was held liable as a trustee for the benefit of his principal. Again in Witte v. Storm, 236 Mo. 470, the doctrine was enunciated that "an agent is wholly prohibited from acquiring, to the prejudice of his principal, directly or indirectly, any interest in property which is the subject-matter of his agency," and a clandestine purchase by an agent of his principal's property was there held to have been made in trust for the use and benefit of the principal. As further illustrative of the principle that one charged with the duty of caring for property as an agent, cannot deal with or become the purchaser of it for his own advantage and to the prejudice of his principal, are the cases of Meek v. Hurst, 223 Mo. l. c. 698; Lytle v. Beveridge, 58 N. Y. l. c. 606; Dodd v. Wakeman, 26 N. J. Eq. 484; and Fountain Coal Co. v. Phelps, 95 Ind. 271.

Nor does the fact that plaintiff's suit was dismissed as to John S. Blake, who the evidence shows was deceased, in any way militate against plaintiff's recovery against the remaining defendants. The rule is that where several wrongdoers are joined as defendants charged with the same tort, plaintiff may, at any stage

of the proceedings, dismiss as to any one or more of them, without affecting the merit of the action or lessening the liability of the others. [Berkson v. Kansas City Cable Railway Company, 144 Mo. 211; Rogers v. Rogers, 265 Mo. l. c. 209; Allen v. Forsythe, 160 Mo. App. 262.] And as far as George F. McLain is concerned, it was not necessary, under the circumstances as disclosed by the record, to make him a party defendant. According to the evidence, notwithstanding McLain's claim of ownership, defendant Hartrich was still the record owner of the property and had made no conveyance thereof to McLain. Hartrich's only step in the direction of divesting himself of title to the property was to execute a deed, with the grantee's name left blank, and deliver the same to John S. Blake. According to his testimony the name of McLain had not to his knowledge been filled in nor was any evidence to that effect adduced.

Defendants' second claim of error is therefore denied.

III.     Defendants complain that the court erred in rejecting proffered testimony of defendant James P. Blake. The questions asked said defendant to which objections were sustained were as follows:

**Testimony Excluded.**

"Q.   Did the John S. Blake & Bros. Realty Company purchase this property at the execution sale?

"Q.   Did you have any knowledge of the sale at the time it was purchased, or did you authorize anybody to purchase it in for you?

"Q.   Have you any interest in this property at the present time?

"Q.   Did you have any knowledge of that fact that John S. Blake was going to purchase it at the time that he bid it in?"

Clearly any answers made by the witness to the foregoing would have been self-serving statements, either as to himself or as to the Realty Company. Consequently they were inadmissible. Furthermore, the witness was

permitted to testify, during the course of his examination, that he had no conversation with John S. Blake about the purchase of the property prior to the time that it was bid in; that it was a day or two after the sale took place that "I first learned of the fact that John S. Blake had been out there at the sale;" that "I have no interest in this lawsuit at all;" and that "I did everything I could to prevent the sale to take place." He further admitted that the property was bid in by John S. Blake in the name of Hartrich. Accordingly, all of the said questions were in effect submitted and answered in different form, and defendants could not have been prejudiced by their exclusion.

IV. Defendants further urge that the court erred in rejecting proffered testimony of Fred A. Blake to the effect that the John S. Blake & Bros. Realty

**Other Excluded Testimony.** Company did not furnish any money towards the purchase price of the property. An examination of the record discloses the following testimony of the witness:

"Q. Who furnished the money for the purchase of this property?

"MR. STEVENS: Objected to, unless he knows of his own knowledge.

"THE COURT: If he knows he can answer.

"Q. Yes, sir; if you know? A. *I don't know personally anything about it.*" (Italics ours).

Upon this admission of the witness that he personally knew nothing about who furnished the money, it was entirely proper for the court to exclude questions inquiring from him as to who furnished the same.

Furthermore, it is immaterial whose money was used in the transaction. [Witte v. Storm, 236 Mo. l. c. 489; De Mallagh v. De Mallagh, 77 Cal. 126.] Thus in Witte v. Storm, supra, where a real estate firm charged with the management of property, purchased at a sale under a judgment which was a lien on the property at the time the agency was created, this court said: "Nor is it im-

portant out of whose funds the consideration was. paid for the title conveyed under the judgment sale. An agent cannot acquire his principal's property by using his own funds to make what was in effect a redemption of the subject-matter of the agency.''

The contention is ruled against defendants.

V.    Defendants finally insist that the court erred in rejecting what were claimed to be carbon copies of two letters from the John S. Blake & Bros. Realty Company to plaintiff.   One thereof was dated November 16, 1918, and in substance advised plaintiff that the Realty Company had looked into the matter of the judgment against her and had prevailed upon the sheriff not to start advertising the property. It also stated that the sheriff could not hold off much longer, as the attorney for the judgment holder was insisting upon advertising the property for sale.   The remaining letter was dated December 21, 1918, and read: ''Are you aware of the fact that your county property is being advertised for sale by the sheriff?   The sale to take place December 30th.   Kindly advise us and oblige.''

The said letters were offered in evidence during the cross-examination of plaintiff without proof, other than the statement of counsel, that they were carbon copies. They were offered by counsel ''on the theory that they are duplicates of the originals.''   Ordinarily, as has been decided, a carbon copy of a letter or document may be regarded as an original and is   admissible in evidence. [Hay v. Fire Clay Co., 179 Mo. App. 567; Wright v. Railroad, 118 Mo. App. 392; Bond v. Sandford, 134 Mo. App. 477; Leschen v. Brazelle, 164 Mo. App. 415.]   However, in the case at bar there was no evidence that the originals of the letters offered were ever mailed or delivered to plaintiff, nor was there any evidence or admission that plaintiff ever received them.   Moreover, they merely related to matters which were in substance covered by the other evidence in the case, and consequently their probative force was not of such character as to have

changed the findings of the trial court. Under all the circumstances we are of the opinion, and so hold, that no error was committed in excluding them.

Having concluded the several questions raised by defendants, ably briefed by counsel, and having given the usual deference to the conclusions of the trial chancellor, upon a thorough and careful review of the entire record we see no good reason to interfere with the decree rendered.

The judgment *nisi* is accordingly affirmed. All concur.