THOMAS CARLIN, Sometimes Known As H. V. DEARMAND, v. EFFIE J. BACON, Administratrix of Estate of Lena Carlin, ET AL., Appellants.—16 S. W. (2d) 46.

Division One, March 29, 1929.

*T. S. Mosby* and *Irwin & Bushman* for appellants.

*Ira H. Lohman* and *Sam S. Haley* for respondent.

RAGLAND, J.—This is a suit in equity against the administratrix and collateral heirs of Lena Carlin, deceased: it seeks to have plaintiff declared an heir of the said Lena Carlin, through the operation of an alleged executed oral contract of adoption. The contract through which such status is alleged to have derived is set forth in the petition as follows:

"Plaintiff for cause of action says that on August 13, 1894, he was placed in St. Ann's Foundling Asylum, situate in the city of St. Louis, Missouri, where he remained as a ward of said institution until August 29, 1897; that on said 29th day of August, 1897, William Carlin and Lena Carlin, husband and wife, took plaintiff from said institution, agreeing to adopt him as their son, no children having been born to the said William Carlin and Lena Carlin and both of whom died childless; that upon taking him from said institution in the city of St. Louis, Missouri, on said date, they immediately brought him to Jefferson City, where the said William Carlin and Lena Carlin were living, and took plaintiff into their home as their son, and assumed the control, custody and care of plaintiff; that they gave to him the name of Thomas Carlin and sent him to school at Jefferson City; that plaintiff was introduced and referred to by the said

William and Lena Carlin as their adopted son, and that they stated upon various occasions that they had agreed to adopt plaintiff as their son and were going to adopt him as their son; that during the time plaintiff remained in the home of the said William and Lena Carlin he rendered to them such obedience and service, and such affection and attention, as are usually rendered to a parent by a child; that after so remaining in said household for a period of six years, plaintiff was compelled to and did leave said home by reason of the mistreatment and abuse received by him from the said William and Lena Carlin; and that thereafter he was compelled to and did earn his own living.''

After hearing the evidence the circuit court found and set forth in its decree: that Lena Carlin died intestate on the 21st day of April, 1924, in Cole County, Missouri, leaving an estate in said county consisting of both personal and real property; that defendant Bacon, on the 24th day of April, 1924, duly qualified as administratrix and immediately took charge and entered upon the administration of the estate of said deceased; that William Carlin, the husband of the said Lena Carlin, died intestate in the year 1919; that all of his property was owned jointly by him and his wife; that the real estate was held by them as tenants by the entirety; that upon the death of said William Carlin all of said property, both real and personal, vested in the surviving wife, Lena Carlin; that neither said William Carlin, at the time of his death, nor the said Lena Carlin at the time of her death, left any issue; and that the defendants, other than the defendant Bacon, are the collateral heirs of the said Lena Carlin, deceased, and claim title to her estate.

Following the findings just set forth, the decree proceeded as follows:

''And the court does further find that on the 13th day of August, 1894, plaintiff was placed in St. Ann's Foundling Asylum in the city of St. Louis, Missouri, by the mayor of said city, as a city foundling, where he remained as a ward of said institution until the 29th day of August, 1897, and that, on the 29th day of August, 1897, William Carlin and Lena Carlin, husband and wife, took plaintiff from said institution under contract and agreement with said institution that they would adopt him and raise him as their child and legal heir, and at the time of entering into said contract, and in pursuance thereof, the care, custody and control of plaintiff was surrendered unto the said William Carlin and Lena Carlin, and plaintiff was immediately taken into their home, and into their household and treated as their child and given the name of Carlin, and that the said William Carlin and Lena Carlin had no children and no children were born to the said William Carlin and Lena Carlin, or either of them.

"That said contract of adoption entered into between the said William Carlin and Lena Carlin and St. Ann's Foundling Asylum has been fully performed by surrendering the full care and custody of plaintiff to said Carlins, and that it was fully performed by the said William Carlin and Lena Carlin by immediately assuming the care, custody and control of plaintiff, and taking him as their child, and that said contract of adoption was, on the part of the said William Carlin and Lena Carlin, a joint contract, but no written deed of adoption was ever signed or executed by them in Cole County, Missouri, but the said William Carlin and Lena Carlin frequently acknowledged said adoption, and by acts and words ratified said adoption agreement."

The evidence discloses rather conclusively that for the first four or five years after taking plaintiff into their home the Carlins not only treated him kindly, but manifested toward him great love and affection. It appears, however, that subsequently their habits of life underwent a marked change; both of them, and Mr. Carlin especial-ly, began to consume immoderate quantities of intoxicating liquor. Almost daily the little boy was sent on a horse to bring a jug of whiskey from the saloon; their treatment of him changed; they were harsh with him; they required him to do tasks beyond his strength and years; and Mr. Carlin, at times, whipped him brutally. Finally, in 1905, when plaintiff was eleven years of age, he left their home. After two or three days he was found by the Chief of Police, Mr. Tolin, wandering the streets of Jefferson City. Mr. Tolin took the boy into his own home, and finding after investigation that the Carlins no longer wanted him and that the boy did not want to return to them, kept him for three years. At the end of that time plaintiff, a boy then fourteen years old, fared forth to earn his own livelihood and never returned.

From the decree establishing the "status of plaintiff as the lawful child and legal heir of the said William Carlin and Lena Carlin" the defendants prosecute this appeal. They have assigned error with respect to the trial court's rulings in twenty-six separately numbered paragraphs, but as their "statement, in numerical order, of the points relied on, with citation of authorities thereunder," required by our Rule 15, covers but three of the assignments, the others will be treated as abandoned. The three briefed are stated as follows:

"1. The action is barred by both the special and the general Statute of Limitations, because the demand was not presented within one year, and because the contract was not sued on until after five years from the date when the cause of action accrued (no disability of plaintiff being pleaded or proven), such defenses being invoked by demurrer, by answer, and by objection to the introduction of testimony.

"2. Plaintiff's action is barred by the Statute of Frauds, because it clearly appears from the petition that the contract was not in writing and was not to be performed within a year, and the allegations of part performance are not sufficient to take the case out of the statute.

"3. Plaintiff, having waited ten years after attaining his majority before asserting his claim, with no explanation of his delay, relying upon parol evidence to establish his right, the rights of third parties having intervened, evidence having been lost by the death of the Carlins, such delay having by reason of loss of evidence worked injury to the rights of the heirs, plaintiff is guilty of gross laches and is presumed to have waived or abandoned whatever rights he may have had."

I. This suit was commenced May 4, 1925, a little more than a year after the death of Lena Carlin. It is not a suit for breach of contract, nor for the specific performance of a contract: it seeks a judicial determination of the status, if any, resulting from an executed contract. The status claimed to have so resulted is that of heir of William Carlin, and also of Lena Carlin. Until rights incident to such status, or growing out of it, were denied, no cause of action with respect to it arose. William Carlin at his death left no property subject to the laws of descent and distribution; consequently, there was no occasion, either for plaintiff to assert or any one else to deny, that plaintiff was the lawful heir of said Carlin. But when Lena Carlin died, and the administration of her estate was brought to a close, plaintiff's right of succession to that estate, as heir and distributee, was denied by the administratrix and the collateral heirs. The cause of action sued on then first arose, and this suit was instituted immediately thereafter. Certainly, plaintiff could not have had himself declared an heir of Lena Carlin prior to her death. *Nemo est haeres viventis.*

The special Statute of Limitation pleaded in bar, the statute of non-claim as it is called, is without application. "The case at bar presents no claim against the estate of the deceased; it is simply a question between the parties claiming to be heirs at law of the intestate." [Lynn v. Hockaday, 162 Mo. 111, 124, 61 S. W. 885.]

Appellants' Point 1 is ruled against them.

II. The contract entered into between St. Ann's Foundling Asylum, a charitable corporation of the city of St. Louis, and the Carlins was not one falling within the clause of the Statute of Frauds which requires "any agreement that is not to be performed within one year from the making thereof" to be in writing.

"An agreement which may, perchance, be performed within a year from its date, consistently with its terms and not in violation of them, is not within the statute, although the performance is liable to occupy more than a year; such as a contract to support one for life, or during an indefinite period, or to work for another for life or for an indefinite period, or to do any other thing possible to be done within a year although the doing of it may continue, and may be·expected to continue, longer." [Biest v. VerSteeg Shoe Co., 97 Mo. App. 137, 149, 70 S. W. 1081, and cases cited.]

The import of the contract involved in this case was that plaintiff should thereby be invested with all the rights and privileges of a lawful child of the Carlins: among others, the right of support, maintenance and humane treatment during his minority. [Sec. 970, R. S. 1889.] Had the Carlins executed at once a formal deed of adoption, as the contract contemplated, and had they on the one hand, or the plaintiff on the other, died within the year, the contract would have been completely performed within that time.

"Cases where the promise is to continue to do something until an implied contingency occur, as, for instance, to pay during the promisee's life; to pay during the life of another; to work for another during his life; to board the promisee during his life; to educate a child; to support a child; to pay during coverture, are not within the statute, because the contracting parties contemplate that the one whose life is involved may die within the year." [Browne, Stat. of Frauds (5 Ed.) sec. 276, p. 361.]

The contract is not within any of the provisions of the Statute of Frauds. "Yet it bears a resemblance to cases within that statute, for the reason that the statute authorizing the adoption of children provides that it may be done by deed in writing, and indicates no other method." [Lynn v. Hockaday, supra, 1. c. 125.] This court has therefore applied to oral contracts of adoption the same rules that are applied to contracts affecting real estate: equity will not permit one party to such a contract to invoke the statute when to do so would work a fraud upon the other. "It is a rule in equity that, when one party to a contract has been placed in such a situation by a total or partial performance, that it would be a fraud on him if the contract was not fully executed, then equity will interfere, notwithstanding the statute." [Farrar v. Patton, 20 Mo. 81, 84; Gupton v. Gupton, 47 Mo. 37, 46.] St. Ann's Foundling Asylum fully executed the oral contract on its part: plaintiff performed it as fully as he was permitted to. The Carlins under color of the contract withdrew plaintiff from the sheltering care of that institution, deprived him of opportunity to be adopted into a home where he would have received humane treatment, and then after a few brief years drove him forth in his helplessness with only such chance of succor as general charity

might afford. Their representatives cannot now take refuge behind the statute.

The petition alleges, by intendment at least, such performance as ''takes the case out of the statute.'' That is sufficient at this stage of the proceeding.

Appellants' contentions under this head are overruled.

III. Laches is not mere delay, but delay that works to the disadvantage of another. The disadvantage the appellants claim to have suffered through respondent's alleged delay in bringing this suit is the loss of evidence through the deaths of Mr. and Mrs. Carlin. Respondent could no doubt have instituted some action during their lives looking to a judicial determination of his status as adopted child, but, as observed in Dillmann v. Davison, 239 S. W. 505, 508, such action would merely have caused further enstrangement and resulted in respondent's disinheritance. But this suit, for the reasons heretofore indicated, could not have been brought until after Mrs. Carlin's death. The defense of laches is without substance.

The judgment of the circuit court is affirmed. All concur.