ALBERT WM. MCINTYRE, Appellant, v. CLEMENTINE HARDESTY, PEARL EVANS, WILLIAM THOMAS TAYLOR, OSCAR MCINTYRE, GOLDIE TINGLE VANCIL, MABEL JONES BURRESS, MYRTLE JONES BELL WAY and THOMAS ELWOOD HARDESTY.—149 S. W. (2d) 334.

April 3, 1941.

*F. P. Sizer, Kelsey Norman, Alfred K. Lee* and *Henry Warten* for appellant.

806

*C. S. Walden* for respondents.

COOLEY, C.—By this action plaintiff sought to be decreed the adopted son of Bert L. McIntyre, and as such the great-grandson and an heir of Tabitha T. Cunningham, deceased, and entitled to share in her estate. (Mrs. Cunningham is called interchangeably in the

record Tobitha and Tabitha.) The circuit court denied the relief prayed and plaintiff has appealed.

Mrs. Cunningham died testate in 1933, at an advanced age. She had given birth to five children, four daughters and a son. The son disappeared many years ago and has not since been heard of. Two of the daughters predeceased their mother, leaving descendants. The other two survive. One of the deceased daughters, Jennie Taylor McIntyre, left a son, Bert L. McIntyre, who it is claimed, agreed to adopt this plaintiff, wherefore it is claimed the plaintiff should be decreed to be his son and a great-grandson and heir of Mrs. Cunningham, said Bert L. having been her grandson. Bert L. McIntyre died in 1921.

In 1926 Mrs. Cunningham made a will disposing of her estate, which was considerable and consisted of both real and personal property. Two of her daughters were then dead and her grandson, Bert L. McIntyre, was dead. Later, two codicils, not here material, were added. By her will Mrs. Cunningham made provision for her various descendants, but did not in either the original will or the codicils mention appellant, who therefore contends he is a pretermitted heir. The will, with its codicils, was duly probated.

Plaintiff was born about March 12, 1917. He, then called Howard Henry, was almost immediately, or at lease very soon, committed to an institution called the Childrens' Home, operated by a board called the Childrens' Home Board, at Joplin, Missouri. Bert L. McIntyre and his wife, Alma, were childless and wanted to adopt a child. The Board above mentioned got in touch with them, resulting that plaintiff was given to them. His name was to be and was changed to Albert William McIntyre. A deed of adoption was made out whereby the Board relinquished plaintiff to the McIntyres who, by said deed, agreed to adopt and said they did adopt plaintiff as their child and heir "as fully as they are by law empowered to do" and agreed to support, educate and maintain him and bestow upon him "the care and treatment due from parent to child." That document was signed and acknowledged by Mrs. McIntyre on March 17, 1917, and by Bert L. McIntyre on March 20, 1917. It was never recorded, as the then law, Sec. 1671, R. S. 1909, required. Plaintiff's foster mother (now Mrs. Ferguson) testified that a Mr. Meade, of the Childrens' Home Board, with whom she and her then husband, Bert L. McIntyre, negotiated for the adoption, advised them not to record it because there was then pending in the Missouri General Assembly a proposed adoption law that would enlarge the privileges of an adopted child. The "proposed" law was later enacted in 1917, and will be referred to hereinafter.

Plaintiff was taken to the home of the McIntyres, where he thereafter lived as a member of the family, conducting himself as a dutiful son, being treated and held out by them as their son, known by the name

of Albert William McIntyre, and it is said that he did not know till shortly before this suit was filed that he was not the natural son of said foster parents. Under all the evidence there can be no doubt that, as between plaintiff and Bert L. McIntyre, the former would be entitled to a decree entitling him to take from said Bert L. McIntyre. [The trial court so found. We shall refer to that later.] For the reasons indicated it is not necessary to detail the evidence tending to show the relations between plaintiff and his foster parents.

The learned trial court found that plaintiff is the adopted son of Bert L. McIntyre and that the adoption was an accomplished fact on March 17, 1917; (it is immaterial whether the date be taken as March 17th, when the verbal agreement was made and when Mrs. McIntyre signed the "adoption deed," or March 20th, when Bert L. McIntyre signed it); that by the law then in force plaintiff was the heir of Bert L. McIntyre and entitled to inherit from him, but not entitled to inherit from his ancestors; that the "enlarged" rights of inheritance created by the 1917 law were not conferred on adopted persons as a class but are limited to those who are thereafter adopted under said Act of 1917; that plaintiff was never adopted in accordance with the Act of 1917 by decree of a Juvenile Court. [The latter is a conceded fact.] The court therefore adjudged that plaintiff is not entitled to inherit from the ancestress (Mrs. Cunningham) of Bert L. McIntyre, and adjudged against the plaintiff. Neither side complains, or under the evidence can complain, of the court's finding that plaintiff would be entitled to take, as an adopted child, from his foster father, Bert L. McIntyre. The question is, can he take as an heir of his foster father's grandmother, Mrs. Cunningham? Because, if he is entitled to inherit from her it must be as her heir. Bert L. McIntyre was dead, not only when the testatrix died but when her will was made.

It seems to us the question narrows to this: Plaintiff does not contend, cannot contend, that there was ever a *statutory* adoption. Under the "old law," R. S. 1909, secs. 1671, 1673, a deed of adoption had to be recorded, and this one was not recorded. But, though not recorded, it could be evidence of an agreement to adopt, which a court of equity may enforce. [See Ahern v. Matthews, 337 Mo. 362, 85 S. W. (2d) 377.] But, assuming that, as the trial court found, plaintiff was entitled to be decreed to occupy the *status* of adopted son of Bert L. McIntyre and to inherit from *him*, does that make him an heir of said McIntyre's ancestors or collateral kin? This question was fully discussed in a learned opinion by LAMM, J., in Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585, wherein it was held that an adopted child—adopted under what we have called the "old law,"—while entitled to inherit from his adopting parent, did not thus become an heir of the adopter's collateral kin. And such is the necessary construction of the "old law." [See Sec. 1673, R. S. 1909.] So, even if plaintiff had been actually adopted in statutory manner under said

"old law," as he was not, since the "deed of adoption" was never recorded—see Sections 1671, 1673, R. S. 1909, Ahern v. Matthews, supra—he could not thus have become an heir of the adopter's ancestors or collateral kin. [Hockaday v. Lynn, supra.] Therefore, even though, as the trial court found, he was entitled to be decreed an adopted son of Bert L. McIntyre and entitled to "inherit" or to take from *him* under our Statute of Descents and Distribution (Sec. 306, R. S. 1929, Mo. Stat. Ann., p. 194), it does not necessarily follow that he was entitled to inherit as an heir from said Bert L. McIntyre's ancestress or collateral kindred. A lawyer friend of the writer used to say, "property follows blood." That thought is emphasized, I think, in Hockaday v. Lynn, supra, in construing the then statute.

The present adoption law of Missouri is the Act of 1917, now part of Chapter 125, Article 1, R. S. 1929, Section 14073 et seq., Mo. Stat. Ann., p. 822, et seq. It was enacted by the General Assembly at its 1917 session, was approved by the Governor April 10, 1917, and became effective June 18, 1917. It thus appears it was not in force, had not even been enacted by the General Assembly, when it is claimed plaintiff's "adoption" was agreed to be made by his adoptive parents on March 17 or March 20, 1917. As we have pointed out that "adoption" was not accomplished as a statutory adoption under the then existing statute and there was never any adoption under the provisions of the 1917 Act.

Plaintiff cites numerous cases from other jurisdictions holding, in effect, that the Legislature—the lawmaking body—may confer upon an adopted child the right, the capacity, to inherit as of the date of the death of the decedent, though such right or capacity did not exist under the law in force at the time of the adoption. Most of them are cases where there had been a statutory adoption under statutes creating the legal relation of parent and child between the adopter and the person adopted. We do not believe it necssary to analyze those decisions or the statutes on which they are based. Our own statute must govern.

Grant that, as the trial court found, plaintiff was entitled to be decreed the adopted son and heir of Bert L. McIntyre. As we have said, he cannot take as Bert L. McIntyre's heir, but, if at all, as Mrs. Cunningham's heir. In St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S. W. (2d) 685, this court, *en banc,* said in substance and effect, that the *Legislature*—the lawmaking body—can (at least for inheritable purposes), "change the blood stream" of an adopted child. Grant that. Grant also that the Legislature has the power to prescribe how the property of a decedent shall be disposed of. *I* can make a stranger to my blood *my* child and heir, but can I, without legislative sanction, make that person heir of my brother or sister or other collateral kin, who may not even know of the existence of such adopted person?

I think not, and I think Hockaday v. Lynn, supra, bears out this conclusion.

We come then to consideration of the 1917 adoption law and its possible effect in the instant case. In St. Louis Union Trust Co. v. Hill, supra, this court said that the rights of adopted children are set forth in Sec. 14079, R. S. 1929, Mo. Stat. Ann., p. 826 (contained in the 1917 Act), and quoted that section, emphasizing a portion thereof which we here quote, as follows:

"When a child is adopted in accordance with the provisions of this article, all legal relationship, and all rights and duties, between such child and its natural parents, shall cease and determine. Said child shall thereafter be deemed and held to be for every purpose, the child of its parent or parents by adoption, as fully as though born to them in lawful wedlock."

The court also quoted old Section 1673, R. S. 1909, said that the 1917 Act repealed said former law, and said, 336 Mo. 17, l. c. 24, 76 S. W. (2d) l. c. 688:

"By comparing these two sections we see that the Legislature sought to radically change the rights of adopted children from that that existed prior to the year 1917. Under the statute in force prior to 1917, the adoption was made legal by a deed of adoption, and the statute expressly stated that the relation of parent and child was confined to the parties to the deed. It excluded all collateral kin by adoption. The procedure required under the terms and provisions of our present adoption statutes are such as to constitute a new and complete Code governing adoption of children and the rights and relations flowing therefrom."

In said case of St. Louis Union Trust Co. v. Hill, the court cited with approval Shepherd v. Murphy, 332 Mo. 1176, 61 S. W. (2d) 746, wherein (61 S. W. (2d) l. c. 748 [3-4]) it is said: "Reverting to the section above set out (Sec. 14079, R. S. 1929, supra) it will be noted that it is therein expressly declared that *from and after the adoption* . . ." (Italics ours) the adopted child shall be deemed *"for every purpose"* (Italics the court's in the Hill case, supra) the child of its parent or parents by adoption. Prior to the 1917 Act, a person could adopt a child by a deed of adoption, executed and recorded as the then statute required, without asking or obtaining the consent of the child's natural parents and without affecting the inheritable rights between the child and his or her natural parents. [See Hockaday v. Lynn, supra; St. Louis Union Trust Co. v. Hill, supra.] The 1917 Act radically changed the relationship of an adopted child (adopted pursuant to the provisions of that Act) not only to his or her adoptive parent but to his or her natural parent. In Shepherd v. Murphy, supra, it was held that the natural parent of an adopted child (adopted under the provisions of the 1917 Act) could not inherit from the child. So it is apparent that by the Act of 1917, the Legislature

"sought to radically change the rights of adopted children from that that existed prior to the year 1917." [St. Louis Union Trust Co. v. Hill, supra.] Not only was the *procedure* for adoption changed but the *rights* and relations arising from adoption *pursuant to that statute* were radically changed.

Grant, as we have said, and as was held in St. Louis Union Trust Co. v. Hill, supra, that the Legislature has the *power* to "change the blood stream" as it were, for inheritable purposes, but keeping in mind, also, that according to the natural instincts of humanity and statutes based thereon (see Hockaday v. Lynn, supra) in this country consanguinity has been given so important recognition and effect in Statutes of Descent (see Hockaday v. Lynn, supra), should it not be held that a legislative Act so radically changing the relations of an adopted child to his adoptive parent and also *to such adopting parents' collateral kindred* should show such legislative intent?

We have quoted certain provisions of Section 14079, supra, that "when a child is adopted in accordance with the provisions of this article," etc. Other provisions of the Act may appropriately be referred to. By Sec. 14073, R. S. 1929, Mo. Stat. Ann., p. 822 (unless otherwise indicated references hereinafter will be to R. S. (Mo.) 1929, Mo. Stat. Ann., p. 822, et seq.), it is provided that any person desiring to adopt another person as his child may petition the Juvenile Division of the Circuit Court, etc., for permission so to do. [For brevity we call this the Juvenile Court.] If the child is over the age of twelve years he must consent to the adoption. If under twenty-one years of age, his parent or guardian must consent. [Sec. 14074.] [There are certain exceptions regarding consent, not here material.] Section 14075 makes provision for certain institutions to whom children have been committed to act in adoption proceedings. By Sec. 14076, if the requisite consent has not been given, the court must require notice to be given to parties interested, as therein specified. By Sec. 14077, provision is made for appointment of a guardian *ad litem* for the child, if necessary. By Sec. 14078, it is provided that when the necessary preliminary steps as to consent, notice, etc., have been taken, the court, if "after due hearing" is satisfied that the adoption should be decreed, may make a decree "setting forth the facts and ordering that *from the date of the decree* the child shall, to all legal intents and purposes, be the child of the petitioner or petitioners," etc. (Italics ours.)

Appellant argues that the 1917 Act conferred upon *all* adopted children as a class, whether previously or thereafter adopted, the same rights of inheritance, both from the adopting parent and such parent's kindred. We doubt whether such contention, if sustained, could aid appellant's cause, because he was not adopted according to statutory requirements, under either the "old law" or the 1917 Act. His petition pleads an agreement to adopt which he was entitled to have en-

forced by a court of equity. The evidence showed such agreement and that appellant was entitled to have it enforced. If we grant, for argument's sake, that he was entitled to have the court decree that he thus occupied the *status* of an adopted child, yet that agreement was prior to the 1917 Act and we do not believe the court could, by decreeing enforcement of such agreement, make appellant an heir of the adopting father's kindred. Such decree would entitled appellant, as we have said, to take, we may say the same as a natural child, from the adopter, but we think, not as heir of the adopter's kindred.

The Legislature has the power to change what has been usually considered in this country the natural course of descent of property, and prescribe a different course of devolution. And, again, grant that, as it were, it may "change the blood stream" for inheritable purposes, as was said in St. Louis Union Trust Co. v. Hill, supra, yet, it seems to us, if the greatly enlarged rights of adopted children and curtailment—we might well say destruction—of the rights and relations to the child of its natural parents—(see Shepherd v. Murphy, supra, St. Louis Union Trust Co. v. Hill, supra)—and the right of an adopted child to inherit from the *kindred* of the adopter, was intended by the lawmaking body to be made, it should so appear in the legislative Act making such change. In our opinion it does not so appear in the 1917 Act. That Act, it seems to us, was intended to apply altogether prospectively and to persons adopted according to the provisions and requirements of the Act. Appellant was never so adopted.

An interesting discussion of the question of the right of an adopted child to inherit from the adopter's kindred is found in Re Estate of Bradley, 185 Wis. 393, 201 N. W. 973, 38 A. L. R. 1, where numerous cases are cited, and in an extensive note, beginning 38 A. L. R., p. 8. We think both the principal opinion in that case and the weight of authority as indicated in the annotations support the conclusion we have reached in this case. In our opinion the judgment of the circuit court is correct and should be affirmed. It is so ordered. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All the judges concur.