KITHCART v. METROPOLITAN LIFE INS. CO.
No. 13008.

Circuit Court of Appeals, Eighth Circuit.
July 31, 1945.

Martin J. O'Donnell, of Kansas City, Mo. (Paul E. Bindley, of Kansas City, Mo., on the brief), for appellant.

Henry I. Eager, of Kansas City, Mo. (Harry Cole Bates, of New York City, and Michaels, Blackmar, Newkirk, Eager & Swanson, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, THOMAS and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The action is one to reform and recover on an accident insurance policy. The trial court, on motion of the insurer, entered an order of dismissal, equivalently as a summary judgment, and the insured has appealed.

The insured had brought suit in 1931 on the policy as it stood, to recover benefits for disability alleged to be due to accident. The insurer removed the action to federal court and defended on the ground, among others, that the alleged disability was not one resulting from "bodily injuries * * * caused directly and independently of all other causes by violent and accidental means", within the coverage clause, but that on the contrary it was the result, wholly or in part, of dementia praecox, and so was under the exclusion clause that "This insurance shall not cov-

er * * * accident, injury, disability, death or any other loss caused wholly or partly, directly or indirectly, by disease or bodily or mental infirmity". On a trial in 1933 to a jury, there was a general verdict for the insurer, and the insured took no appeal from the judgment.

Through the years that have since passed, the insured has filed four additional suits against the insurer, not including the present action, some at law and some in equity. Two of these he dismissed voluntarily along the way, and the other two have been the subject of proceedings in the district court and of appeals by the insured to this court, where the judgments have been affirmed. See 88 F.2d 407 and 119 F.2d 497. The general history of all this litigation has been related in our previous opinions and need not here be repeated.

The purpose of the present action, in substance, is to have inserted in the policy, through reformation, a provision to the effect that it was agreed at the time the insurance was written (1) that the insured was then "of sound mind, sound body, [and] good health"; (2) that the insurer had investigated and "determined conclusively" that such was the fact; (3) that the insurer bound itself not to "use any prior evidence to the contrary thereof in any legal proceedings"; (4) that the insurer was "hereby estopped from all objection that any prior mental or bodily diseases or infirmity contributes to any future disability of the [insured] after said date"; and (5) that the fact that such a special provision was intended to be and had been made a part of the insurance contract should be "sufficiently evidenced" by the mere delivery of the policy. The petition alleges that the provision had been drawn up between the insured and the insurer's agent and had been forwarded to the insurer's home office with the insured's application and that by the insurer's acceptance of the application and the issuance of the policy the provision had become a part of the actual contract even though it had been omitted from the language of the policy.

The reason given for the present attempted reformation is that the insured has been denied the right in his previous litigation to make proof of this special provision as part of his contract, in view of the clause in the policy that "No change in this policy shall be valid unless approved by an executive officer of the Company and such approval be endorsed hereon." The petition shows on its face, however, that that denial had been made as far back as 1933, by the insurer's objection and the trial court's ruling in the action initially brought on the policy, from which the insured took no appeal. It is recited in the petition that on that trial the insurer as part of its defense introduced evidence to show that the insured was then, and had been even prior to the time that the policy was issued, suffering from dementia praecox, and that the disability for which he was seeking to recover was caused wholly or in part by this ailment, and that he, to meet this issue, "then and there offered to prove all the terms of said entire contract of insurance as mutually expressed and intended by said parties * * but that said evidence was ruled out by the court as inadmissible in said action at law."

The insured thus was advised in 1933 by a specific legal ruling against him, which he did not attempt to make the subject of an appeal, that it was impossible for him to claim the existence of any such extraneous provision to the policy in an action at law to recover benefits under it. In spite of this ruling, he has waited almost 11 years before bringing this suit for reformation.

Under Missouri law, statutes of limitations apply alike to legal and equitable actions. Ludwig v. Scott, Mo.Sup., 65 S.W.2d 1034; Burrus v. Cook, 215 Mo. 496, 114 S.W. 1065; Rogers v. Brown, 61 Mo. 187; Kelly v. Hurt, 61 Mo. 463. This state rule is binding on the federal courts, where jurisdiction rests on diversity of citizenship, in equity as well as at law. Guaranty Trust Co. of New York v. York, 65 S.Ct. 1464.

The general limitation on suits for reformation in Missouri is 10 years. Mo.R.S.A. § 1013; Hoester v. Sammelmann, 101 Mo. 619, 14 S.W. 728. The statute runs from "the date the right accrued." Stark v. Zehnder, 204 Mo. 442, 102 S.W. 992, 994. In cases of mistake or of omissions not due to fraud, the reformation right ordinarily is deemed to have accrued at the time the mistake or omission occurred. Hoester v. Sammelmann, supra; Stark v. Zehnder, supra. But even if the situation is one where the statute may not previously have commenced to run, the denial of a known right or status upon an assertion of it clearly will put the statute in

operation. Cf. Carlin v. Bacon, 322 Mo. 435, 16 S.W.2d 46, 48, 69 A.L.R. 1.

On the face of the insured's petition, his present attempt, made in 1944, to insert the alleged additional provision in the policy by reformation was barred as a matter of general limitation under the Missouri statute. The fact that, on the trial of the insured's original action in 1933, he "then and there offered to prove all the terms of said entire contract of insurance as mutually expressed and intended by said parties", and that the insurer objected to the offering of any such proof, and that "said evidence was ruled out by the court as inadmissible in said action at law" constituted a clear denial by the insurer of any right in the insured to claim the existence or benefit of the asserted provision, whose alleged terms he at that time declared that he knew. Indeed, the petition further recites that the insurer and its agents at that time expressly denied and have at all times since denied that th..y had any recollection or knowledge of such a provision ever having been included with or made a part of the application.

The petition attempts to escape the general statute of limitations and to bring itself within the special statute, Mo.R.S.A. § 1014, which allows an action for relief on the ground of fraud to be instituted within 5 years after the accrual of the right, "the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." But, while the 23-printed-page petition abundantly uses the word fraud, it does not set out any facts which legally can be accepted as having prevented the general statute of limitations from commencing to run in 1933 against the insured's right to have the asserted provision incorporated in the policy. Thus, while it is alleged that the insured was induced to delay bringing reformation proceedings by the statements of the insurer's agents that the asserted provision would constitute a part of the contract by the insurer's acceptance of the application and issuance of the policy, whether the provision was attached or not, such lulling effect as those statements, if made, could have had would legally have ceased to exist on the trial of the insured's original action and the court's ruling on the insurer's objection that such a provision was not on the face of the policy a part of the insured's contract. Similarly, if it was a fraud, as the insured contends, for the insurer and its agents to have denied on that trial and subsequently that the asserted provision ever had been included with or made a part of the application, that fraud was one which definitely became known to the insured in 1933. His declaration that on the initial trial he "then and there offered to prove all the terms of said entire contract" is, as heretofore stated, an admission that he fully knew the contents of the asserted provision, and it is further obvious from the petition that his present information in relation to the asserted provision similarly is and can only be based on that knowledge.

Other recitations are made in the petition in an attempt to justify the insured's delay in seeking reformation, but these have no bearing or significance on the running of the statute against his right to have the asserted provision made a part of the policy. Thus his charge, if true, that the insurer had medical reports and other information in its possession from the time the policy was issued showing that he was not suffering from dementia praecox, which he could not and did not discover until 1939, could not affect the necessity of his bringing a timely reformation suit to avail himself of the asserted provision, after his right to rely on any such provision in an action at law had been denied in 1933.

The running of the statute of limitations was one of the grounds urged by the insurer in its motion to dismiss the insured's petition. It was a ground on which summary judgment could properly be entered, Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Reynolds v. Needle, 77 U.S.App.D.C. 53, 132 F.2d 161; Roe v. Sears, Roebuck & Co., 7 Cir., 132 F.2d 829, 832; and for that purpose the insurer's motion to dismiss was entitled to be treated as one for summary judgment, Central Mexico Light & Power Co. v. Munch, 2 Cir., 116 F.2d 85; Boro Hall Corporation v. General Motors Corporation, 2 Cir., 124 F.2d 822. The trial court rested its dismissal or summary judgment order on the ground that the insured's right to seek reformation was res judicata. Whether this ground was sound or not, we need not consider, for the bar of the statute of limitations is plain on the face of the petition, the question has been argued by the

parties, and we are entitled to sustain the judgment on that ground. An appellate court may, when necessary or desirable, sustain a correct judgment on a different ground than that adopted by the trial court, where such a ground is one that is within its power to formulate. Securities and Exchange Commission v. Chenery Corporation, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626; J. E. Riley Inv. Co. v. Commissioner of Internal Revenue, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36; Elizabeth Arden Sales Corporation v. Gus Blass Company, 8 Cir., 150 F.2d 988.

▮▮▮▮ The insured has also argued as a ground for reversal that the trial court erred in overruling the plea to the federal court's jurisdiction which he filed after the insurer had removed the action from state to federal court on diversity of citizenship, for the reason that the removal statutes are unconstitutional. He charges that sections 28 and 29 of the Judicial Code, 28 U.S.C.A. §§ 71, 72, deny or abridge his privileges and immunities as a citizen of the United States and of Missouri, by permitting a nonresident defendant, like the insurer, to remove a case to the federal court for diversity of citizenship, when he, as a resident of Missouri, has chosen to bring the action in the courts of his own State. It is unnecessary to state the details and extremities of the argument, because no question of abridgment of privileges and immunities under Article IV of the Constitution, section 2, or under section 1 of the Fourteenth Amendment is involved.

Statutes authorizing the removal of suits of a civil nature from state to federal court for diversity of citizenship have been part of the Judicial Code since 1789. They have their root in Article III of the Constitution, sections 1 and 2, providing that "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish", and that "The judicial Power shall extend * * * to Controversies * * * between citizens of different States * * *", and in Article I, section 8, providing that "The Congress shall have Power * * * To make all Laws which shall be necessary and proper for carrying into Execution * * * all * * * Powers vested by this Constitution in the Government of the United

States, or in any Department * * * thereof."

The validity of such congressional acts, based on these constitutional provisions and authorizing the removal of suits of a civil nature from state to federal court for diversity of citizenship, has uniformly been recognized by the Supreme Court. We shall not attempt to enumerate the many decisions in which the question has been discussed. The expression made in Gaines v. Fuentes, 92 U.S. 10, 18, 23 L. Ed. 524, is typical and is here sufficient. The court there said: "But, in cases where the judicial power of the United States can be applied only because they involve controversies between citizens of different States, it rests entirely with Congress to determine at what time the power may be invoked, and upon what conditions,— whether originally in the Federal court, or after suit brought in the State court; and, in the latter case, at what stage of the proceedings,—whether before issue or trial by removal to a Federal court, or after judgment upon appeal or writ of error. The Judiciary Act of 1789, in the distribution of jurisdiction to the Federal courts, proceeded upon this theory. It declared that the circuit courts should have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, involving a specified sum or value, where the suits were between citizens of the State in which they were brought and citizens of other States; and it provided that suits of that character by citizens of the State in which they were brought might be transferred, upon application of the defendants, made at the time of entering their appearance, if accompanied with sufficient security for subsequent proceedings in the Federal court. The validity of this legislation is not open to serious question, and the provisions adopted have been recognized and followed with scarcely an exception by the Federal and State courts since the establishment of the government. But the limitation of the original jurisdiction of the Federal court, and of the right of removal from a State court, to a class of cases between citizens of different States involving a designated amount, and brought by or against resident citizens of the State, was only a matter of legislative discretion. The Constitution imposes no limitation upon the class of cases involving controversies between citizens of different

States, to which the judicial power of the United States may be extended; and Congress may, therefore, lawfully provide for bringing, at the option of either of the parties, all such controversies within the jurisdiction of the Federal judiciary."

There is no merit in the insured's contentions and the judgment is affirmed.