Fred KUCHENIG, Appellant,

v.

The CALIFORNIA COMPANY, Appellee.

No. 25640.

United States Court of Appeals Fifth Circuit.

April 11, 1969.

Rehearing and Rehearing En Banc Denied July 7, 1969.

Solomon S. Goldman, Hugues J. de la Vergne III, Louis de la Vergne, New Orleans, La., for appellant.

Lawrence K. Benson, John C. Christian, New Orleans, La., Edward M. Carmouche, Lake Charles, La., for appellee; Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., of counsel.

Before WISDOM, THORNBERRY, and GOLDBERG, Circuit Judges.

WISDOM, Circuit Judge:

This case, a sequel, perhaps not the last, to Kuchenig v. California Co., 5 Cir. 1965, 350 F.2d 551, cert. denied, 382 U.S. 985, 86 S.Ct. 561, 15 L.Ed.2d 473,[1] presents two questions. Under Missouri law, what effect should be given to a so-called "equitable" adoption, that is, a de facto adoption that has almost all, but not all, of the legal consequences of an adoption in strict compliance with the Missouri adoption statute? Under Louisiana law, what effect should be given in this case to the adoptee's claim to land in Louisiana allegedly owned by his adoptive parents?

Missouri courts recognize so-called "equitable" adoptions for purposes of an adoptee's inheriting from his adoptive parents. If the land that is the subject of this suit had been located in Missouri, Fred Kuchenig would have received it by descent, just as if he had been born to Martin and Maria Kuchenig, his adoptive parents. We hold, therefore, that Louisiana courts would recognize Fred Kuchenig as entitled to any interest in the Louisiana land that would accrue to a "lawfully adopted" person under Louisiana law.

\* \* \*

1. In *Kuchenig I* the plaintiff-appellant's petitory demand was dismissed for failure to join an indispensable party. This Court retained jurisdiction and reserved judgment as to the demand for accounting, pending the outcome of the case at bar. Kuchenig later joined the Louisiana State Mineral Board as a defendant and added a cause of action to have the State of Louisiana's mineral lease removed as a cloud on the title. The defendants' motions to dismiss were overruled. Kuchenig v. California Company, E.D.La.1964, 233 F.Supp. 389.

In 1912 Martin Kuchenig and his wife, Maria Ragas Kuchenig, of St. Louis, Missouri, took into their home an infant, two months old. They called him Fred Kuchenig and raised him as their son. School and church records confirm that he always bore the name Fred Kuchenig. Not until World War II, upon his employer's requiring a birth certificate, did he learn that he had been adopted. On July 31, 1912, the Kuchenigs had executed a "Deed of Adoption", a copy of which is in the record. In terms, the deed recited that his new parents adopted him "as fully as they are by law empowered to do". The deed admittedly was never recorded, as required by Missouri law. Martin Kuchenig died August 1, 1948, and his wife died September 16, 1957, leaving Fred Kuchenig as their only heir.

In 1961 Kuchenig filed a complaint against the California Company (now Chevron Oil Company) (1) for damages for trespass, (2) for an accounting for severed minerals, and (3) for a judgment removing as a cloud on his title an oil lease from the State of Louisiana to the California Company. The land is a submerged area in Breton Sound in Plaquemines Parish, Louisiana. Kuchenig does not allege that he is in possession and admits that he has "never seen the property". The action is based upon his alleged ownership through inheritance from Martin Kuchenig. While this suit was pending, Fred Kuchenig obtained an ex-parte Judgment, Order, and Decree of the Circuit Court of St. Louis, Missouri, Equity Division, declaring him to be "the adopted son of Martin and Maria Kuchenig". California does not collaterally attack this decree.

Kuchenig takes full advantage of the equity decree but also argues that it neither adds to nor subtracts from his right to prove his adoptive parents' executed contract to adopt him. He contends that under Missouri law he had all the rights a legally adopted child has to inherit from adoptive parents. Cali-

fornia contends that Kuchenig was not "lawfully adopted" within the meaning of Article 4, § 16 of the Louisiana Constitution. The district court agreed with the defendants,[2] and granted summary judgment in favor of California.

## I.

■ In this Erie-bound case, Missouri, as the domiciliary state, controls the law as to Kuchenig's status and Louisiana controls the law as to the devolution of the land. We look to the forum state's choice-of-law rule in resolving which state law applies. Klaxon Co. v. Stentor Manufacturing Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

■ Succession to immovable (real) property is determined by the law of the situs of the land. Sevier v. Douglass, 1892, 44 La.Ann. 605, 10 So. 804; Succession of Simms, 1965, La.App. 4 Cir., 175 So.2d 113, aff'd, 250 La. 177, 195 So.2d 114; Alexander v. Gray, 1938, La. App. 4 Cir., 181 So. 639; Akin v. Louisiana National Bank, 5 Cir. 1963, 322 F.2d 749; A.L.I. Restatement, Conflicts § 247 (1934); Annot., 87 A.L.R.2d 1240 (1965).

Article 4, § 16 of the Louisiana Constitution of 1921, in effect at the time of Martin Kuchenig's death, provided: " * * * children *lawfully* adopted shall have the same rights in the successions of the persons adopting them, as children who are forced heirs." (Emphasis added.) Article 214 of the Louisiana Civil Code carries out the constitutional mandate by declaring, "The adopted person is considered for all purposes as the legitimate child and forced heir of the adoptive parent or parents * * *."

■ Louisiana follows the general rule that the status of an adoptee will be recognized by the courts of the state of the situs of the land for purposes of succession under the law of the situs, unless the adoption violates public policy of the state. Welch v. Jacobsmeyer, 216 La. 333, 43 So.2d 678 (1949); Succession

---

2. The district court gave no reasons for its judgment.

of Caldwell, 114 La. 195, 38 So. 140 (1905); Alexander v. Gray, 181 So. 689 (La.App.1938); Akin v. Louisiana National Bank, 5 Cir. 1963, 322 F.2d 749; A.L.I. Restatement, Conflicts § 143 (1934);[3] Annot., 87 A.L.R.2d 1240 (1963); Lunn, The Rights of One Legitimated or Adopted in Another State in a Louisiana Succession, 10 La.L.Rev. 390 (1950).

## II.

California contends that Kuchenig never acquired the *status* of a child "lawfully adopted". This contention is based on the assumption that "status" means, as defined in Black's Law Dictionary (3d Ed.): "The legal relation of individual to rest of the community." Here, so the argument runs, "Missouri distinguishes between the *legal status* which vests in a child lawfully adopted in compliance with statute as opposed to the benefits of equitable estoppel afforded a child by a Chancellor's decree in equity". The argument is close to a play on words if, *for purposes of inheritance from his adoptive parents,* an adoptee recognized as equitably adopted stands in the same position as one adopted in strict compliance with the Missouri adoption statute. We are not concerned with the fact that Kuchenig might not inherit from collaterals nor they from him. We are concerned with whether Missouri courts would recognize Fred Kuchenig as the adopted child of Martin and Maria Kuchenig and as such entitled to inherit not just the beneficial title but the full fee, to the same extent as if the deed of adoption had been recorded.

■ The statute in effect at the time of Fred Kuchenig's adoption provided for adoption by deed. Mo.Laws § 1671, ch. 20, art. 1, R.S.1909.[4] There is reason to think that it was not unusual in Missouri for adoptive parents to withhold recordation deeds to conceal the fact of adoption from the adoptee or from the over-curious; the adoptee could establish his right to inheritance with and without the deed. *See* Holloway v. Jones, 1922, Mo., 246 S.W. 587. It is important to note that under the 1909 statute a child legally adopted by a properly executed and recorded deed could inherit property from the adoptive parents, but *not* from collateral relatives of the adoptive parents; nor could collaterals inherit from the adoptee. Hockaday v. Lynn, 1906, 200 Mo. 456, 472, 98 S.W. 585, 588, 8 L.R.A.,N.S., 117; McIntyre v. Hardestey, 1941, 347 Mo. 805, 149 S.W.2d 334; Weber v. Griffiths, 1941, 349 Mo. 145, 159 S.W.2d 670. Thus before 1917, adoptions ran only in favor of the adopted child. In 1917 the legislature enacted a statute providing for adoption by decree of the juvenile court. Mo.Rev. Stat.Ann. § 453.010 (1952). The effect of the 1917 statute differed from that of its predecessor in that a child adopted under it is treated for all purposes, including inheritance, as a legitimate child of his adoptive parents. Mo.Rev.Stat. Ann. § 453.090 (1952); Robertson v. Cornett, 1949, 359 Mo. 1156, 225 S.W.2d 780; St. Louis Union Trust Co. v. Hill, 1934, 336 Mo. 17, 76 S.W.2d 685. A child, therefore, adopted under the 1917 statute was given greater inheritance rights relative to collaterals than a child lawfully adopted under the 1909 statute. Later, to cure this disparity, the Missouri legislature amended the law to provide that a child adopted by deed before 1917 would be treated for all purposes as a child adopted after 1917. Mo.Rev.Stat. Ann. § 453.150 (1952). See Limbaugh,

---

3. The A.L.I. Restatement, Conflicts—§ 143 (1934) provides: The status of adoption, created by the law of a state having jurisdiction to create it, will be given by the latter state to the status of adoption when created by its own law.

4. The 1909 statute reads, in part: If any person in this state shall desire to adopt any child or children as his or her heir, it shall be lawful for such person to do the same by deed, which deed shall be executed, and acknowledged by the person adopting such child or children and recorded in the county of the residence of the person executing the same, as in the case of conveyance of real estate.

The Adoption of Children in Missouri, 2 Missouri L.Rev. 300 (1937).

 Missouri courts have consistently held that statutes requiring adoption through ceremonies, deed or court proceeding, are not exclusive. "Even when such statutes prevail, there may be contracts to adopt between parties, and such contracts will be enforced as to property rights by Courts of equity upon death of the adopter, even though they are not in writing."[5] Limbaugh, The Adoption of Children in Missouri, 2 Missouri L. Rec. 300, 303 (1937). In Lindsley v. Patterson, Mo.1915, 177 S.W. 826, L.R.A.1915F., 680, where the adoptive parent had not executed a deed of adoption, the court commented on the 1909 statute as follows:

> "This statute only authorizes the husband and wife to adopt a child or children in the manner and form therein stated, but it does not prevent them or either of them from adopting a child or children in any other lawful manner. Mrs. Patterson, as previously shown, had entered into an oral contract of adoption, during her marriage to Mr. Patterson all of which was known to him, and by his acquiescence and conduct he must have ratified the adoption.

\* \* \* \* \* \*

We are therefore clearly of the opinion that Mable Patterson was the lawfully adopted child of Mrs. Lindsley, and that under the laws of this state she was and is competent to inherit real, personal, and mixed property from Mrs. Lindsley in the same manner and *to the same extent as though she had been her natural born child.* (Emphasis added.)

In Carlin v. Bacon et al., 1929, 322 Mo. 435, 16 S.W.2d 46, 69 A.L.R. 1 no formal Deed of Adoption was ever executed. Nevertheless, the Court found that the child had been orally acknowledged by the adoptive parents and "by acts and words" they had ratified the oral adoption agreement. On appeal, the holding of the Trial Court that the adoption was effective was affirmed. In Dillmann v. Davison, Mo.1922, 239 S.W. 505, the deed of adoption was not properly acknowledged. The court held: "If deceased orally agreed to adopt defendant and the contract was fully performed by him, his status is the same as if such formal adoption had actually been executed." In Remmers v. Remmers, Mo.1922, 239 S.W. 509, the adoptive father had failed to include the child as an heir and the latter sued to be declared to be the adopted son of the decedent, entitled to

5. Limbaugh continues: "The general rule is that a court of equity has jurisdiction to so enforce a parol contract for adoption where the contract has been fully performed by the child and it would be inequitable to deny adoption. Not only do courts of equity enforce oral contracts of adoption in this manner, but they also require fulfillment of a collateral agreement of the adopting parent to leave the adopted child his estate at his death. In order to sustain oral contracts to adopt, courts of equity require that proof thereof must be clear, cogent and convincing, and of such a character as to leave no reasonable doubt in the mind of the chancellor that the particular contract alleged was made. The courts do not even require such parol contracts of adoption to be established by direct evidence, the general rule being that such contracts may be shown by the acts, conduct and admissions of the adopting parties. So vigilant are courts of equity in enforcing oral contracts to adopt, that it is generally held that where one takes a child into his home as his own, thereby voluntarily assuming the status of parent, and by reason thereof obtains from the child the love, affection, compensation and services which ordinarily accrue to a parent, he or those claiming through him will thereafter be estopped to assert that he did not adopt the child in the manner provided by law. And if the evidence does not establish an express contract, the courts may infer, from the acts, conduct and admissions of the adopting parties, that an oral contract existed and that it was on the faith of such contract that the child was given to and taken by them." 2 Missouri L.Rev. at 303.

a portion of his estate. The Court sustained the adoption saying:

> The status of plaintiff as an adopted child was fully established in and prior to 1903 by the agreement made in 1879 and by the full performance thereof on the part of the plaintiff.

In Thomas v. Maloney, 1909, 142 Mo.App. 193, 126 S.W. 522, discussing the effect of oral agreements to adopt the court observed:

> In effect this meant that in adopting the child they would give it the status of an issue of their own bodies—no more, no less. A statutory deed of adoption would have conferred on the child these precise rights and nothing more. Chapter 90, Rev.St.1899.

Since 1917, children "legally" adopted in Missouri have been treated differently from children "equitably" adopted—but only in the scheme of inheritance rights: Both types of adoptees inherit from the adoptive parents, but only children adopted in strict accord with Missouri statutes inherit from their adoptive parents' relatives. This distinction is based on the theory that an equitable adoption amounts to specific performance of the defective deed of adoption, and therefore binds only the parties to the contract. *See* Rumans v. Lighthizer, 1962, 363 Mo. 125, 249 S.W.2d 397; Menees v. Cowgill, 1948, Mo.App., 214 S.W.2d 561, 1949, 359 Mo. 697, 223 S.W. 2d 412, cert. denied, 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585. .

Rumans v. Lighthizer and Menees v. Cowgill undoubtedly distinguish between legal and equitable adoption. But these cases involved *collaterals* asserting a right of inheritance from the adoptee. These cases, decided under the 1917 statute did not involve the adopted child's right of inheritance in an adoptive parent's estate. Collaterals may inherit only in cases of adoptions conforming to the strict requirements of the 1917 statute. In *Menees,* therefore, the court logically pointed out: "[I]n an equitable proceeding based upon contract, only the parties thereto, or those in privity with them

are bound. * * * A decree of equitable adoption merely forecloses 'the parties to the suit against a denial of the status' * * * decreed exists only in equity and against the judgment defendants". ·223 S.W.2d at 418. But this is enough when the effect of the decree is to allow inheritance in full ownership from an adoptive parent.

Even the 1917 statute did not abolish non-statutory or equitable adoptions in Missouri, nor affect the right of the child so adopted to inherit from its foster parents. This is made plain in Long v. Willey, Mo.1965, 391 S.W.2d 301 where the child was taken into adoptors' home in 1932 without any action in the Juvenile Court. Nevertheless, on proof of performance of adoptors' agreement to adopt the child, the court said:

> [W]e are of the opinion that adoption with all the incidents of an adoption ordered and approved by a juvenile court should not be decreed by a court of equity, but only that an equitable adoption be decreed to the extent that *plaintiff* [the child] *becomes an heir of Mr. and Mrs. Daggett* [the foster parents]. (Emphasis added.)

In Drake v. Drake, 1931, 328 Mo. 966, 43 S.W.2d 556, the plaintiff sought to be declared the owner in fee as an equitably adopted child. The Supreme Court of Missouri granted the relief, instructing the lower court to "enter a decree adjudging * * * [Drake] to be the adopted son * * * and precluding all other parties to this action from hereafter claiming any interest [in the land]." Similarly, in Taylor v. Coberly, 1931, 327 Mo. 940, 38 S.W.2d 1055, the court granted the plaintiff's prayer that she be declared the adopted child and that the title and right to the property be vested in her. *See also* Bland v. Buoy, 1934, 335 Mo. 967, 74 S.W.2d 612.

California argues that under Missouri law, citing State ex rel. Bolshaw v. Montgomery, 1940, 237 Mo.App. 678, 146 S.W. 2d 129, an equitably adopted child is not entitled to take immediately on the death of his foster parents; that he must

bring a suit for title after the estate is distributed. In State ex rel Bolshaw v. Montgomery, the court said:

> A suit to establish an equitable adoption from its beginning during its process and at its conclusion, requires the exercise of power which can be exercised only by a court of equity in a single suit with adversary parties, pleadings, and issues, and proceeding according to the process, the rules and principles peculiar to and which are recognized only by a court of equity, in contradistinction to a common law court, and ending in a decree instead of a judgment, and dealing with the duty of the party to account for and turn over property to which he holds the legal title, but which in equity and good conscience, belongs to the one claiming to be so adopted, and which would constitute a palpable fraud if those claiming under the deceased were permitted to deny the adoption. Such a suit can be presented after the estate is finally settled, against those receiving only the legal title to the property.

*See also* Foster v. Petree, 1941, 347 Mo. 992, 149 S.W.2d 851; Carlin v. Bacon, 1929, 322 Mo. 435, 16 S.W.2d 46. These cases, however, hold only that a suit to enforce legal title in an equitably adopted child as an "heir" can be brought only after the foster parents are dead, a natthat the equitably adopted child receives ural enough result. They do not hold no rights in the fee.

■ In short, Missouri courts use the technique of an equitable decree, enforcing specific performance of an executed (sometimes oral) contract, to arrive at the result of treating the adoptee as a full heir to the estate of his adoptive parents. The effect is the same as if the adoption had complied strictly with the statute.

## III.

There are wide differences of approach and policy between the law of descent and distribution in a common law state and the law of successions in Louisiana. One of the basic differences lies in the Louisiana system of forced heirship,[6] "one of the oldest concepts of the civil law and the core around which all succession law has grown".[7] In every instance of a foreign adoption the adoptee will have more rights in Louisiana as a forced heir than he would in the state of adoption; conversely, a Louisiana adoptee would have fewer rights in a state where the adoptor may have property than in Louisiana. In spite of this lack of reciprocity arising from a difference in policy, the Louisiana Supreme Court has said, "We should give effect to the decree of adoption, unless it is clearly repugnant to our laws". Succession of Caldwell, 1905, 114 La. 195, 38 So. 140, 142. In *Caldwell* the Court gave effect to a Massachusetts decree of adoption for purposes of succession to movables. The Court held that under the full faith and credit clause and on the "mere principles of comity" the adoptee was entitled to all the rights of a child born to the deceased.

In Alexander v. Gray, La.App.1938, 181 So. 639, the court refused to enforce a written agreement of adoption confected in Kansas on the ground that it did not bind the parties under Kansas law. The court noted, however, that: "If said instrument has the force and effect of an act of adoption under the laws of Kansas, it would be so recognized in this state * * * 'even though the foreign adoption be by a method different from the domestic one' ". 181 So. at 645.

In Akin v. Louisiana National Bank, 5 Cir. 1963, 322 F.2d 749, the question

---

6. LSA–C.C. Art. 1493: Donations *inter vivos or mortis causa* can not exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.

Under the name of *children* are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.

7. Porter, Forced Heirs, The Legitime and Loss of the Legitime in Louisiana, 37 Tul.L.Rev. 710, 711 (1963).

was what effect should be given to a New Mexico adoption with respect to a Louisiana estate. This Court, sitting as a Louisiana court because jurisdiction was based on diversity, held that the adoptee is to be treated as if he were adopted under the laws of Louisiana with the right to inherit as a forced heir, although he enjoyed no such right under the law of New Mexico.

■ As a further indication whether foreign created "status" for purposes of Louisiana succession law may violate the public policy of Louisiana, we look to an analogous situation: Louisiana recognizes foreign legitimation for purposes of Louisiana succession laws, unless this foreign-created status would violate the state's public policy. Scott v. Key, La.S. Ct.1856, 11 La.Ann. 232; Annot., 87 A.L.R.2d 1274 (1963). Comment, The Rights of One Legitimated or Adopted in Another State In A Louisiana Succession, 10 La.L.Rev. 390 (1950).

In Succession of Caballero v. The Executor, La.S.Ct.1872, 24 La.Ann. 573 (1872), the child was the illegitimate offspring of a white man and a Negro woman. The child was born in Louisiana, but shortly thereafter, he and his parents moved to Spain, where the subsequent marriage of his parents was valid and had the effect of legitimating the child under Spanish law. Under Louisiana law in effect at that time, the child of a miscegenous union could not be legitimated. The court, however, held that the status of legitimation created in Spain had the effect of making the child legitimate for all purposes, including succession to land in Louisiana.

Thus Louisiana courts gave effect to a nonresident's status as an adoptee which could not have been accorded to a resident because of the strong public policy against miscegenation. If recognizing the Spanish created status in *Caballero* did not violate the public policy of the State of Louisiana, it is difficult to see how recognizing the status of Kuchenig as an equitable or de facto adoptee would violate the State's public policy.

The tolerance of Louisiana courts in giving effect to foreign-created status is of long standing. In Marie Louise, F.W.C.[8] v. Marot, 1836, 9 La. 475, a case cited in Justice McLean's dissenting opinions in the Dred Scott case,[9] a slave owned by a Louisiana citizen was taken to France. When she breathed the free air of France she acquired the status of a free person.[10] On her return to Louisiana her former owners attempted to hold her in slavery. Notwithstanding the strong Louisiana policy in favor of slavery, the Louisiana Supreme Court held: "Being free for one moment in France, it was not in the power of her former owner to reduce her again to slavery".

There is one non-Louisiana case strikingly similar on the facts to the case now before this Court. In re Schultz's Estate, 1959, 220 Or. 350, 348 P.2d 22, 81 A.L.R.2d 1121. There the plaintiff asserted a claim in Oregon on the ground that he had been adopted by an agreement, executed in Nebraska. The agreement had not ripened into a legal adoption under the Nebraska law, although Nebraska, like Missouri, allowed "equitable" adoptions. This procedure was foreign to Oregon's adoption law. Nevertheless, the Oregon court recognized the status of the claimant as an equitable adoptee under Nebraska law for purposes of succession to the land located in Oregon:

> Can we say that because a contract for adoption would be invalid in Oregon that its enforcement would be so offensive to our deeply-rooted public policy that we should refuse to enforce it here, even though valid under the laws of a sister state? The nub of the Oregon rule emphasizing strictness is that adoption can only be accomplished

---

8. Free woman of color.

9. Dred Scott v. Sanford, 1856, 19 How. 393, 60 U.S. 393, 15 L.Ed. 691, 765.

10. *Cf.* Lord Mansfield decision in Somerset v. Stewart, 1772, Lofft 1, 20 Howell's State Trials 79.

by compliance with the statutory scheme. The Nebraska rule in conflict recognizes that an *agreement to adopt* in accordance with the statutory procedures of that state may give rise to a de facto adoption status which the courts of that state will ripen into a de jure status when properly presented. * * * [The] Nebraska contract * * * contains nothing which violates any fundamental principle of justice, or prevalent conception of good morals or any deep-rooted tradition of the common weal in this state. *Id.* at 28.

Finally, California argues that recognizing the equitable adoption of Missouri would violate the civilian principle of *le mort saisit le vif.* Under this doctrine the heir is "considered as having succeeded to the deceased from the instant of his death". LSA–C.C. art. 944. California contends that under Missouri law, an equitably adopted child receives an interest in his foster parents' estate only after the death of the foster parent, thereby violating *le mort saisit le vif.*

■ The doctrine of *le mort saisit le vif* requires that there can be no gap in seisin; on the death of the *de cujus,* legal title immediately vests in the decedent's heirs. This is not to say that the doctrine is no narrow as to exclude unknown heirs or absent heirs at the date of death. *See* LSA–C.C. arts. 944, 945. The cases cited by the California Company to show that under Missouri law an equitably adopted child is incapable of taking any interest on the decedent's death stand merely for the proposition that an "heir" cannot be determined until the death of the ancestor. In Carlin v. Bacon, 322 Mo. 435, 16 S.W. 2d 46, 49 (1929), the court specifically pointed out that, although one cannot be adjudged an "heir" prior to the decedent's death, a child may be declared to have been equitably adopted while his

foster parents were still alive. Thus, even, if the equitably adopted child may not be adjudicated to be an "heir until after the decedent's death", he may be recognized as having been the adopted child of the decedent and consequently seized of the decedent's rights at the moment of the parent's death.

In sum, since an equitably adopted person is the legal heir of his adoptive parents, the Missouri scheme of equitable adoptions does not violate the Louisiana doctrine of *le mort saisit le vif.*

■ Assuming, to the best of our limited ability, the robes of Louisiana judges, as we must under Erie, we conclude that Fred Kuchenig is entitled to any interest in the Louisiana land owned by his adoptive parents that a "lawfully adopted" person would be able to assert under Louisiana law. This decision is without prejudice to California to the State of Louisiana and to any other interested party to show that Fred Kuchenig was not in fact adopted or that the decree of "equitable" adoption has no effect for reasons not advanced thus far in this proceeding.

We reverse the judgment of the district court and remand the case for proceedings consistent with this opinion.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.